AO 91 (Rev. 11/11) Criminal Complaint



# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

United States of America

v.

Qian COLLINS, Deante BRUCE, Kevin WINSTON, Shannon WILDER, Kevin TENNER, Deangelo JACKSON, ███████ Maurice HAMPTON, Jr., & Davontae ARMSTRONG

*Defendant(s)*

Case No. **24-M-303 (SCD)**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___July 2022 - March 2023___ in the county of ___Milwaukee___ in the

___Eastern___ District of ___Wisconsin___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841; 846; & 843(b) | Possession with the intent to distribute controlled substances; Conspiracy to possess with the intent to distribute controlled substances; & Use of a communication device in furtherance of drug trafficking. |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Aaron Hoppe, DEA TFO
*Printed name and title*

Sworn via telephone; transmitted via email pursuant to Fed. R. Crim. 4.1

Date: ___2-2-24___

_____
*Judge's signature*

City and state: ___Milwaukee, WI___

Honorable Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

CLERK'S OFFICE
A TRUE COPY
Feb 02, 2024
S. JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# AFFIDAVIT IN SUPPORT OF
## SEARCH WARRANT & COMPLAINT

I, Aaron Hoppe, being first duly sworn, hereby depose and make this affidavit in support

of:

(A) a complaint seeking arrest warrants naming Qian L. COLLINS (DOB XX/XX/1994),

Deante K. BRUCE (DOB XX/XX/1997), Kevin D. WINSTON (DOB XX/XX/1996), Shannon D.

WILDER (DOB XX/XX/1989), Kevin A. TENNER (DOB XX/XX/1987), Deangelo L.

JACKSON (DOB XX/XX/1991), ██████████████████ Maurice F.

HAMPTON, Jr. (DOB XX/XX/1997), and Davontae L. ARMSTRONG (DOB XXXX/1992),

(Collectively referred to the Target Subjects); and,

(B) an application for a search warrant to seek evidence of illegal possession and

distribution of controlled substances, and conspiracy to do the same, in violation of Title 21, United

States Code, Sections 841 and 846; and use of a communication device in furtherance of drug

trafficking, in violation of Title 21, United States Code, Section 843. The places to be searched

pursuant to this warrant are **2456 North Cramer Street, Milwaukee, Wisconsin (Target**

**Location 1); 3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2); 4618 North**

**38th Street, Milwaukee, Wisconsin (Target Location 3),** ██████████████████

██████████████████ **, 5241 North 68th Street, Milwaukee, Wisconsin**

**(Target Location 5), 5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6),**

**2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7), 4531 North 26th**

**Street, Milwaukee, Wisconsin (Target Location 8)** (collectively referred to the Target

Locations), any vehicles controlled or owned by the occupants of the Target Locations and its

occupants, as further described the Attachments A.

1

## I. INTRODUCTION AND AGENT BACKGROUND

1.      I have been a law enforcement officer since May 30, 2007.  I am currently assigned to the Waukesha County Sheriff's Department Detective Bureau.  I have been assigned to a Federal Drug Task Force (Milwaukee HIDTA) and have been assigned to the Waukesha County Metro Drug Unit in 2012-2013, 2015-2017, and from 2022-Present.  I have been a part of hundreds of state and federal investigations related to drug activity.

2.      I have received extensive training on the investigation of death investigation, narcotics investigation, cell phone analytics, and I am currently a member of the Board of Directors for the Wisconsin Association of Homicide Investigation.

3.      I have conducted investigation ranging from death, drug, property, and child exploitative crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims.  I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone.  I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos, which are also used by drug traffickers.

2

4.     I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I have been trained regarding these offenses and has arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 18, United States Code, Section 922(o) and Title 21, United States Code, Sections 841 and 846. I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

5.     I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

6.     I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms

3

possession firearms trafficking, and drug trafficking. Additionally, I am familiar with street name(s) of firearms, controlled substances, and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

7.      This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.  This affidavit is also based upon information gained from interviews with cooperating witnesses, and informants, whose reliability is established separately herein.

8.      The investigation to date has included traditional law enforcement methods, including, but not limited to: confidential informants, information from other law enforcement officers; recorded conversations; controlled buys; documentary evidence; physical surveillance; telephone records; electronic surveillance; and physical seizures.  However, because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrant.

9.      Based on training, experience and participation in drug trafficking investigations and associated financial investigation involving controlled substances, I know and have observed the following:

4

a. I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States.

b. I am familiar with the coded language utilized over the telephone to discuss drug trafficking and know that the language is often limited, guarded, and coded. I also know the various code names used to describe controlled substances. I know it is common that those individuals engaged in drug trafficking often use more than one cellphone. This is done to attempt to insults a drug trafficker and to evade law enforcement detections.

c. I know that it is common for persons involved in the sales of controlled substances to be armed with guns and/or to keep firearms in their residence/apartment for their protection and the protection of their controlled substances.

d. It is a common practice for individuals engaged in high level drug trafficking activities to use multiple locations to conduct their drug trafficking activities. For example, a "stash house" is a location used to store controlled substances, firearms, and U.S. Currency.

e. I know large-scale drug traffickers often purchase and/or title their assets in fictitious names, aliases or the names of relatives, associates, or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in the names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them.

f. I know large-scale drug traffickers must maintain on-hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business.

g. I know it is common for persons involved in large-scale drug trafficking and related financial crimes to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds, such as drug ledgers, currency, financial instruments, precious metals and gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, passbooks, letters of credit, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers. Because narcotics trafficking generates large sums of cash, it requires the keeping of detailed records as to the distribution of narcotics as well as the laundering of the proceeds. Such records also typically provide evidence as to the identity of additional criminal associates who are facilitating the laundering of the narcotics proceeds

5

on behalf of the organization. These records, unlike controlled substances, are often maintained for long periods, even several years. These items are maintained by the traffickers within residences, stash houses, vehicles, or other locations over which they maintain dominion and control.

h.   I know it is common for drug traffickers to maintain books, records, receipts, notes ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale, and distribution of controlled substances. That the aforementioned book, records, receipts, notes, ledger, etc., are maintained where the traffickers have immediate access to them.

i.   It is common practice for individuals who are involved in business activities of any nature to maintain books and records of such business activities for lengthy periods of time.  It is also common practice for individuals who maintain these records to keep them in places that are secure but easily accessible such as in their businesses, offices, or personal residence.

j.   It is also common that individuals who are attempting to conceal their true income from the IRS will maintain records that will establish their true ownership of assets or other expenditures in a secret manner. These records have included bank records, automobile titles, property deeds, cashier's check receipts, money order receipts, wire transfer receipts, documents pertaining to storage facilities or safe deposit boxes, documents or agreements detailing the true ownership of assets, photographs of the true owners with the concealed assets, or other items such as sales receipts, purchase orders, or shipping invoices.

k.   Likewise, it is common for businesses who engage in transactions with individuals involved in criminal activity to conceal the nature of the transactions through false records such as invoices, by maintaining false financial records, or placing the transaction in a nominee name. These businesses may need to keep these false records for inventory or bookkeeping reasons.   However, these false records may be placed in a separate location such as a personal residence, safe, or safe deposit box for concealment.

l.   I know large-scale drug traffickers often use electronic equipment such as telephones (landlines and cell phones), pagers, computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities.

6

m. I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering and structuring activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency.

n. I know that the Currency Transaction Report (CTR) (FinCen Form 104), which is required to be completed and filed with the IRS by all financial institutions on every currency transaction that exceeds $10,000, causes tremendous problems with drug traffickers when they attempt to negotiate their illegal profits at a financial institution; I further know that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

o. I know drug traffickers commonly maintain addresses or telephones numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization(s).

p. I am familiar with computers, cellular telephones, pagers and their uses by drug traffickers to communicate with suppliers, customers, and fellow traffickers and by those engaged in money laundering and structuring activities to communicate with their associates and financial institutions; That drug traffickers use these devices to record their transactions and aspects of their lifestyle related to drug dealing, whether in the form of voicemail, email, text messages, video and audio clips, floppy disks, hard disk drives, flash drives, CD's, DVD's, optical disks, Zip disks, flash memory cards, Smart media and any data contained within such computers or cellular telephones, electronic storage media and other settings particular to such devices; I know that such devices automatically record aspects of such communications, such as lists of calls and communications, and any particularized identification assigned to those source numbers or email addresses by the owner of the devices.

q. Specifically, I know the following information can be retrieved to show evidence of use of the computer to further the drug trade and/or related financial crimes; Computer systems and cellular telephones, including but not limited to system components, input devices, output devices, data storage devices, data transmission devices, and network devices

7

and any data contained within such systems; and computer media and any data contained within such media and other material relating to computer systems and the internet including but not limited to, documentation, operating system software, application or access program disks, manuals, books, brochures, or notes; and computer access codes, user names, log files, configuration files, and passwords, screen names, email addresses, IP addresses and cellular / wireless telephones, SIM cards, any removable storage devices for telephones, and any data contained therein, including but not limited to stored telephone numbers, recently called numbers list, text messages, digital audio and/or video recordings, pictures, settings, and any other user defined settings and/or data.

10.     Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

11.     This affidavit is intended to show merely that there is sufficient probable cause for the requested legal process and does not set forth all of my knowledge about this matter.

12.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of possession and distribution of controlled substances, and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841 and 846; and use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843, have been committed by Qian L. COLLINS (DOB XX/XX/1994), Deante K. BRUCE (DOB XX/XX/1997), Kevin D. WINSTON (DOB XX/XX/1996), Shannon D. WILDER (DOB XX/XX/1989), Kevin A. TENNER (DOB XX/XX/1987), Deangelo L. JACKSON (DOB XX/XX/1991), █████████████, Maurice F. HAMPTON, Jr. (DOB XX/XX/1997), Davontae L. ARMSTRONG (DOB XXXX/1992), and other known and unidentified subjects.

8

13.     Further, I also believe there is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II.     LOCATIONS FOR WHICH SEARCH WARRANTS ARE SOUGHT

14.     For the reasons discussed herein, there is probable cause to believe that located at and in the following properties, more fully described in Attachment B and collectively referred to as "Target Locations," are items that constitute evidence of the crimes committed by the Target Subjects, including violations of possession and distribution of controlled substances, and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841 and 846; and use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843, as described in Attachment B:

a.     **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** to include all vehicles that have objective indicia that the vehicles are operated by or connected to the Target Subjects, its occupants, the garage, and outbuildings at this address. This address is utilized by Qian L. COLLINS. Described is described as a two-story, side-by-side multi-family structure with multi-arched roof and separate front entry doors with white storm door to each unit via concrete staircase with white fencing on the westside of the structure. 2456 is the southern unit with second floor balcony enclosed by white fencing, nearest the building's driveway that leads to rear parking concrete slab to the east of structure. The structure has light tan siding with gray shingled roof and multiple tan-colored brick chimneys. "2456" is affixed via placard above the front entry door to the residence.

b.     **3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2)** to include all vehicles that have objective indicia that the vehicles are operated by or connected to the Target Subjects, including a white 2013 Hyundai Sonata sedan with Wisconsin license plate AJA-5060 (Sonata) and a 2023 Jeep Gladiator bearing Michigan registration DE75373 (Gladiator), its occupants, the garage, and storage unit, at this address. This address is utilized by Shannon D. WILDER. Described as a one-story, single-family home with arched roof containing small window and concrete stoop leading to front entry door. Entry door consists of etched glass window that covers upper half of door, followed by fully glassed storm door. Exterior video surveillance cameras are visible on the northeast front corner of the structure. Three large windows are contained on the front of the residence, which faces to the east, with white trim. Horizontal white-tan siding covers the residence with gray shingled roof. "3533" is affixed via placard to the upper left of the entry door near outside light and just above mounted black in color mailbox. Parking concrete slab in rear off alleyway to the west of structure next to detached garage.

9

c.     **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3)** to include all vehicles that have objective indicia that the vehicles are operated by or connected to the Target Subjects, including a Nissan Rogue bearing Wisconsin license plate ARE- 7654 (Rogue), its occupants and the garage at this address. This address is utilized by Kevin D. WINSTON. Described as a as two-story, single-family structure with wooden staircase leading to front entry door on west side of building. Front of residence consists of small wooden porch leading to entry door with storm door. Tan in color brick pillars adjacent to porch entryway with four glass windows to the south of entryway. Second floor has two windows underneath arched roof. Horizontal brown siding covers the residence with tannish-brown shingled roof. "4618" is affixed via placard to the right of front entry door just above mounted mailbox. Detached garage accessible from alleyway to the east of structure.



e.     **5241 North 68th Street, Milwaukee, Wisconsin (Target Location 5)** to include all vehicles that have objective indicia that the vehicles are operated by or connected to the Target Subjects, including a black Honda Civic bearing Wisconsin license plate AMR- 4746, its occupants, and the garage at this address. This address is utilized by Deante K. BRUCE. Described as a two-story multi-family structure, "5241 and 5243", with common front entry door on the east side of the structure. Two mailboxes are on either side of common front entry door, which is white with small half-moon windows at the top and screen storm door. Bottom level contains horizontal white siding with green trim around large window and four smaller windows. Second level contains horizontal green siding with white trim around large window and four smaller windows with grayish-brown shingled roof. "5241" is affixed via placard to the left of the common entry door on the east side of building. Detached garage and concrete parking slab accessible from alleyway to west of structure.

f.     **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)** to include all vehicles that have objective indicia that the vehicles are operated by or connected to the Target Subjects, blue Honda Odyssey Minivan, bearing Wisconsin license plate, AUN-7847 (Odyssey)and a 2017 Ford Fusion bearing Wisconsin license plate APT-3844 (Fusion), and its occupants at this address. This address is utilized by Maurice F. HAMPTON Jr. Described as single-family, one-story structure that faces east. The front

entry door is located central on the east side of structure with small concrete covered porch with concrete steps leading to porch area. On southeast side of front of residence are new multiple lattice windows with white trim. The residence consists of yellow horizontal siding with red horizontal siding upper portion of east side just below roof arch, with brown shingled roof. "5051" affixed via placard to the left of front entry door on east side of structure. Free standing detached garage is accessible via driveway behind residence to the west, consisting of same yellow and red horizontal siding.

       **g.**     **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7),** Cellular Journie LLC, to include all vehicles that have objective indicia that the vehicles are operated by or connected to the Target Subjects**,** and its occupants at this address. This address is utilized by Qian L. COLLINS. Described as a multi-purpose structure with business suites on lower level and multi-family units on second level. First floor exterior is white painted brick with multiple windows covered in metal gating with illuminated business signage. Two entry doorways are on the front of the building on the east side. Second floor is brick and white stucco-style siding with white trim around multiple windows and curved arched roof with brown shingles. "2679" is displayed via placard to the left of the entry door located at the northeast corner of the structure on the first floor.

       **h.**     **4531 North 26th Street, Milwaukee, Wisconsin (Target Location 8)** to include all vehicles that have objective indicia that the vehicles are operated by or connected to the Target Subjects, including a 2018 black Nissan Altima, bearing Wisconsin license plate AJL-8956 (Nissan Altima), its occupants at this address, and the detached garage. This address is utilized by Deangelo L. JACKSON. Described as single-family, two-story residence with concrete staircase leaded to centrally located front entry door. Staircase has cast iron fencing with a front storm door made of decorative cast iron and knob with deadbolt on left side. Wooden awning with brown shingles is located directly above entry door and staircase. First level consists of tan and brown brick siding with white and brown plastic awning above southeast front window. Second level consists of horizontal brown siding with white and brown plastic awning above second level southeast front window. Brown wooden privacy fence is located on southeast side of residence and chain link fence on the northeast side of residence. To the west of building is freestanding detached garage with brown shingle roof with access from alleyway to the west of the residence. "4531" is displayed via placard to the left of the front entry door on the eastside of the building above suspected camera doorbell.

## III.    PROBABLE CAUSE

### A.    Background

15.    Beginning in March 2023, Drug Enforcement Agency (DEA) and the Waukesha County Drug Task Force, hereinafter referred to as "case agents," began investigating a drug trafficking organization (DTO) operating in the Eastern District of Wisconsin which involves Qian

L. COLLINS (DOB XX/XX/1994), Deante K. BRUCE (DOB XX/XX/1997), Kevin D. WINSTON (DOB XX/XX/1996), Shannon D. WILDER (DOB XX/XX/1989), Kevin A. TENNER (DOB XX/XX/1987), Deangelo L. JACKSON (DOB XX/XX/1991), ███████ ███████ ███████ Maurice F. HAMPTON, Jr. (DOB XX/XX/1997), Davontae L. ARMSTRONG (DOB XXXX/1992), and other identified and unidentified subjects. Through confidential sources, undercover controlled buys, physical surveillance, and electronic surveillance case agents have learned this DTO sells fentanyl, purported to be heroin, methamphetamines, and cocaine. Case agents also determined that members of the DTO utilizing multiple residences and multiple vehicles, including rental vehicles, to store and distribute their narcotics throughout the Eastern District of Wisconsin. Further, the DTO members would share a drug customer line to conduct its drug trafficking.

16.     Around July 2022, case agents were investigating an armed drug trafficking organization (ADTO) operating in the Eastern District of Wisconsin which was led by Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, and others.

17.     Between July 2022 and March 2023, CS 1[1] and/or UC obtained approximately 790 grams of heroin, which some of the substances field tested positive for fentanyl; 240 grams of methamphetamine; and 155 grams of cocaine from the ADTO during the controlled buys.

---

[1] CS 1 information is credible and reliable, CS 1 has given information concerning individuals involved in illegal activities which has been independently verified through this investigation. The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS 1 cooperated with law enforcement for consideration on pending criminal drug charges in Waukesha County as well as previous drug charges in Kenosha County during the time. CS 1 has no arrests or convictions relating to dishonesty but has had past arrests or convictions for felony drug offenses and other felony bodily harm offenses. Following the investigation and CS 1's active cooperation, which included controlled buys outlined in this affidavit, CS was arrested on new drug offenses. CS 1 currently has a new pending drug charge, but he has not provided any consideration for his prior cooperation in this investigation.

Additionally, during 10 of the undercover controlled buys, the UC obtained approximately 20 firearms from the ADTO. Some of the firearms were installed with a Glock auto-sear device (switch), which converts a semi-automatic firearm into a full-automatic firearm, and other times the UC just purchased a Glock auto-sear device. The UC obtained approximately nine Glock auto-sear devices from the ADTO.

18.    On April 11, 2023, a grand jury in the Eastern District of Wisconsin returned a thirty-one-count indictment charging Azjuan K. MERIWETHER, Dontrell Q. FRANKLIN, and many others with numerous charges including conspiracy to possess with the intent and distribution of controlled substances, possession of machineguns, firearms trafficking and other drug and gun offenses. *United States v. Meriwether et al.*, case number 23-CR-69.

19.    While investigating MERIWETHER et al, on March 27, 2023, ADTO member Daniel RODRIGUEZ-PEREZ, was murdered. On March 28, 2023, Dontrell FRANKLIN was arrested for RODRIGUEZ-PEREZ's homicide and later charged in Milwaukee County Case Number 2023CF1706.

20.    On April 8, 2023, Shannone BROWN, another member of the ADTO, was arrested in relation not the homicide and provided a *Mirandized* statement to the Milwaukee Police Department (MPD). S. BROWN indicated that RODRIGUEZ-PEREZ was involved in the trafficking or illegal narcotics, specifically "boy and girl," which based on my training and experience, I know to be slang terms for heroin and cocaine. S. BROWN stated that there was another individual, who she identified as Qian L. COLLINS, who was involved with the sale of illegal narcotics with RODRIGUEZ-PEREZ.

21.    S. BROWN stated that the FRANKLIN was arrested in August 2022 for charges related to domestic abuse case where Tasha BROWN, his girlfriend, was the victim. During

13

FRANKLIN's arrest, law enforcement seized $35,000.00, which he possessed. S. BROWN stated that money was a mix of FRANKLIN's and RODRIGUEZ-PEREZ's. After his arrest, FRANKLIN was given a $20,000.00 cash bail which was paid by members of the ADTO. S. BROWN indicated RODRIGUEZ-PEREZ provide $9,000.00, COLLINS provided $7,000.00, Tasha BROWN provided $1,000.00, and MERIWETHER paid an undisclosed sum. Case agents are aware that FRANKLIN was arrested in August 2002 related to a domestic abuse offense and a large amount of cash was initially seized. Case agents are also aware that FRANKLIN's cash bail was set at $20,000 and it was posted by S. BROWN.

22.     Case agents review the criminal history for Qian L. COLLINS, DOB XX/XX1994. COLLINS's prior convictions consistent of a misdemeanor possess/illegally obtained prescription in Milwaukee County Case 2013CF527 and felony possession with intent to deliver heroin in Milwaukee County Case 2013CF4402. Case agents review law enforcement databases and were able to identify COLLINS's telephone as 414-614-5396 during that time.

23.     Case agents reviewed the phone extraction of RODRIGUEZ-PEREZ, following his homicide on March 27, 2023. In RODRIGUEZ-PEREZ's cellphone he had a contact for "Qian"/"Yon" with telephone number 414-614-5396. Case agent searched on CashApp the telephone 414-614-5396, which was connected to an account for "Qian COLLINS."

24.     Case agents also identified a text message in the cell phone belonging to RODRIGUEZ-PEREZ, where the address **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** was shared. Case agents identified **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** as a cellphone store, which public databases indicated is owned by Brianna MADDEN. Case agents later identified MADDEN as COLLINS's girlfriend and mother of his child through the investigation and law enforcement databases. Case agents located

14

text messages where RODRIGUEZ-PEREZ stated the cellphone store is actually owned by COLLINS. Based on my training and experience, I am aware that drug traffickers and other engaged in illegal activities may often place legal businesses in family members' or significant other's names in an attempt to distance the business from the illegal conduct of a drug trafficker. Case agent observed a total of 92 calls between COLLINS's telephone number 414-614-5396 and RODRIGUEZ-PEREZ's telephone 414-807-2942 between February 2, 2023, and March 9, 2023.

25. Case agents later learned that CS 2[2] was arrested in Merrillville, Indiana with several kilos of fentanyl, with possible ties to the MERIWETHER ADTO and COLLINS.

26. On March 28, 2023, CS 2 provided information to the DEA that CS 2 was contacted by an individual known as "Loco." "Loco" was utilizing the phone number 786-208-2153. "Loco" requested CS 2 to fly to Los Angeles, CA in order to deliver a large amount of illegal narcotics. CS 2 met with "Loco" and stayed in the Los Angeles for a few days before departing. "Loco" provided CS 2 with a black Ford Flex bearing California license plate 9CYF241. "Loco" informed CS 2 that the narcotics were being stored in an aftermarket roof compartment. CS 2 then departed traveling from California to Milwaukee.

27. CS 2 was instructed to travel to a residence located at 9300 West Riverwoods Drive, Milwaukee, Wisconsin, which CS 2 described as an Airbnb. CS 2 arrived on an unknown date and parked in the garage as instructed and left the residence for a short time. CS 2 returned a short time later and took custody of the Ford Flex and departed the area. CS 2 then was instructed to

---

[2] CS 2 information is credible and reliable, CS 2's information has been independently corroborated and verified by law enforcement, including information obtained from various public databases, physical surveillance, interviews, and telephone toll analysis. CS 2 has made statements against CS 2's penal interest related to CS 2's direct involvement in illegal activity, including the transportation of narcotics. CS 2's has a prior conviction for retail theft, prior arrests for simple domestic assault, and simple assault. CS 2 is cooperating for judicial consideration.

travel to Cincinnati, Ohio to deliver the remaining narcotics, CS 2 was instructed to contact the number 513-568-2623 upon arriving in Cincinnati. CS 2 S stated that CS 2 did not meet or see anyone while CS 2 was in the Milwaukee area and a complete debrief of the CS is pending.

28.    CS 2 also provided information regarding █████ who she would communicate with using telephone number █████████. CS 2 indicated █████ was a black male. CS 2 indicated she would use telephone number █████████ to talk with █████ CS 2 indicated that █████ would direct CS 2 to certain locations to drop off the drugs also. Based on the investigation into the DTO and review of law enforcement databases, case agents identified █████ as █████ █████.

29.    Case agents learned that the number 786-208-2153, has been in contact with COLLINS's telephone 414-614-5396, a total of 107 times between February 2, 2023, to March 28, 2023. Case agents later learned that the 786-208-2153 line was deactivated after CS 2 provided information to "Loco" that the vehicle had been towed and the illegal narcotics were seized. COLLINS's telephone 414-614-5396 was the second top contact for the user of 786-208-2153.

30.    Case agents were aware that COLLINS had a role in the MERIWETHER ADTO but was unsure of his role initially. Based on interviews conducted after the death of RODRIGUEZ-PEREZ, and preliminary information of COLLINS connections to the 786-208-2153 number that set up the delivery of kilos of fentanyl, case agents believe that COLLINS may supply fentanyl to the MERIWETHER ADTO.

31.    During the investigation into COLLINS, case agents were separately working on another investigation and had conducted multiple transactions with a subject identified as █████ █████ During the investigation into █████ case agents identified a number used by █████ telephone number █████████ █████ provided this number to UC 2, which is

16

described in more detail below.

32. Case agents reviewed call details records between COLLINS' telephone number 414-588-2760 and ███████ telephone number ███████ Between March 31, 2023, to December 8, 2023, case agents observed 408 contacts between COLLINS' telephone number 414-588-2760 and ███████ telephone number ███████ Case agents also observed 329 contacts between ███████ telephone number ███████ and COLLINS's previous telephone number 414-614-5396. Between December 23, 2023, to January 22, 2023, case agents observed four contacts between COLLINS' telephone number 414-588-2760 and ███████ telephone number ███████ Case agents reviewed publicly viewable social media for COLLINS and ███████ and observed they were frequently in each other's. Instagram posts, further described below.

33. As case agents continued to investigate the DTO, case agents identified more connections between COLLINS, ███████ and the DTO, learning that multiple members were family members and it appeared there was a significant connection between the groups. Case agents now believe that COLLINS is a source of supply to ███████

34. On December 5, 2023, agents learned that a DEA TFO, who was acting in an undercover capacity (UC 1) was approached by an individual who identified himself as begin ███████ and provided a phone number of ███████ telephone number.

35. Case agents discussed this interaction with other law enforcement are aware that ███████ is known as ███████, and the number ███████ is associated to ███████ During this encounter with UC 1, ███████ provided UC 1 with a "sample "of fentanyl. Case agent reviewed the video obtained by UC 1. ███████ is observed in the front passenger seat with a large amount of what appears to be fentanyl in his lap, along with a second individual who is operating the vehicle, who also had a large amount of what appeared to be either fentanyl or cocaine in his

17

lap as well.  Case agents later learned that the vehicle was a rental vehicle not associated with

████████  Case agents did review the video and confirmed that ██████ was in fact the individual

in the video.

### B.    Controlled Buys With the DTO

36.    Generally, during the controlled buys of controlled substances and/or firearms the

CS and/or UC placed a recorded phone call and/or sent recorded text messages to the target,

captured audio and video of the controlled purchase. The CS was followed to and from the

controlled purchase location, was searched before and after the controlled purchase with no drugs,

money, or weapons located.  The CS and/or UC was provided pre-recorded funds for the purchase

of the controlled substance, debriefed after the controlled purchase, and the above evidence.  The

CS's statements were reviewed and verified by law enforcement.  Additionally, the controlled

substances were all weighed and tested positive for the listed substance using Nark II test kits

following the printed instructions and the target was identified by the CS and/or UC through

photographs and verified by investigators through DOT photographs, booking photos, and social

media.

37.    During the investigation into the COLLINS's DTO, case agents became aware of

two different confidential sources that could purchase drugs from DTO members.

38.    On June 15, 2023, case agents were contacted by Washington County (WASO)

Metro Drug Unit Investigator Shaun Whealon.  Investigator Whealon had conducted a debrief with

CS 3[3], who provided information for a known drug dealer.  CS 3 knew the drug dealer as "Q."  CS

---

[3] CS 3's information is reliable and credible. Substantial parts of CS 3's information have been independently corroborated and verified by law enforcement, including information obtained from various public databases, physical surveillance, and the forensic extraction of CS 3's telephone. CS 3 has made statements against his/her penal interest related to his/her direct involvement in illegal activity, including the distribution of narcotics, and association with members of the ADTO. CS 3 has misdemeanor convictions for Possession of THC, Possession of Drug Paraphernalia, Possession of Cocaine, and Neglecting a Child.  CS 3 has felony convictions for Possession with Intent

18

3 stated that he/she had been purchasing crack cocaine, heroin, and methamphetamine from "Q" since 2021 and estimated he/she have completed "hundreds" of transactions with "Q" during that time frame. CS 3 stated that he/she would complete transactions for smaller amounts, anywhere from 1-4 grams at a time.

39. CS 3 stated that the transactions usually occur in the area of East Meinecke Avenue and North Holton Street or West North Avenue and East Oakland Avenue, all in Milwaukee, Wisconsin. CS 3 indicated that he/she was aware that "Q" owns a cellphone store in the area of North Holton Street, Milwaukee, Wisconsin. Case agents have identified that COLLINS owns a cell phone store identified as Cellular Journie LLC, located at **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7),** which is listed in MADDEN's name. CS 3 stated that there have been multiple times another individual, identified as a "Nephew" of "Q" would complete the transaction. CS 3 described this individual as a "younger" black male.

40. CS 3 provided two numbers for "Q", telephone numbers 414-419-4427 and 414-588-7377. CS 3 stated that "Q" primarily utilized the 414-419-4427 line but also utilized the 414-588-7377 line. The 414-588-7377 line was identified as "Q's second number" in the cell phone belonging to CS 3. Investigator Whealon then completed a photo-line-up with CS 3, who confirmed the person she knew as "Q" was in fact COLLINS.

41. CS 3 stated that he/she had sent people to pick up heroin for him/her in the past. CS 3 indicated that he/she would be able to call COLLINS and tell COLLINS that he/she would not be able to make it and that someone else was coming to pick up for him/her.

42. In 2022, case agents also spoke with CS 1 regarding CS 1's knowledge of drug

to Distribute THC, Possession of Narcotic Drug, and Bail Jumping. CS 3 is not cooperating for judicial consideration and is not receiving payment for his/her cooperation.

19

traffickers in the Eastern District of Wisconsin. CS 1 stated she/he previously purchased controlled substances from ███ and "DJ", who worked together to distribute controlled substances. CS 1 later identified ███ as ███ and "DJ" as Deangelo L. JACKSON, with photos obtained by law enforcement. CS 1 stated she/he would contact ███ and "DJ" using telephone number 414-627-3832. CS 1 began completing controlled transactions with ███ and JACKSON shortly after the debrief with CS 1.

a. **Controlled Buy July 22, 2022, with Deangelo JACKSON using 414-627-3838**

43. On July 22, 2022, CS 1 completed a controlled drug buy of 6 grams of heroin with JACKSON at 12621 West North Avenue, Brookfield, Wisconsin.

44. CS 1 contact telephone number 414-627-3838 and was directed to the area of 12621 West North Avenue, Brookfield, Wisconsin. Case agents observed a 2018 black Nissan Altima, bearing Wisconsin license plate AJL-8956 (Nissan Altima). CS 1 met with the operator of the Nissan Altima, who was identified as JACKSON. JACKSON provided CS 1 with 6 grams of suspected heroin in exchange for $400. Case agents later field tested the controlled substance, which tested positive or fentanyl. JACKSON was identified by CS, 1 as well as by case agents while reviewing video obtained by CS 1 during the transaction. JACKSON was alone during the transaction.

b. **Controlled Buy July 29, 2022, with ███ using ███**

45. On July 29, 2022, CS 1 arranged to purchase heroin from telephone number ███. CS 1 was told to go to 12625 West Capitol Drive, Brookfield, Wisconsin. CS 1 arrived and met with ███ provided CS 1 with the suspected heroin in exchange for $640. ███ arrived operating a 2017 Ford Escape bearing Wisconsin license plate APG-2029

20

(Escape).

46.     Following the controlled drug transaction, CS 1 provided case agents with the suspected controlled substances.  Case agents tested the substance, which weighed 9.9 grams and tested positive for fentanyl.

   c.     **Controlled Buy August 11, 2022, with Deangelo JACKSON using 414-627-3838**

47.     On August 11, 2022, CS 1 arranged to purchase heroin from telephone number 414-627-3832.  CS 1 was told to go to 12419 West Hampton Avenue, Butler, Wisconsin.  CS 1 arrived and met with JACKSON.

48.     JACKSON was operating the Nissan Altima.  JACKSON was alone during the transaction.  Jackson provided CS 1 7.0 grams of a substance later testing positive for fentanyl in exchange for $560.00.  JACKSON was identified by CS 1 as the person who completed the transaction along with case agents who reviewed video obtained by CS 1 during the transaction.

   d.     **Controlled Buy October 4, 2022, with Deangelo JACKSON and ▮▮▮▮▮▮▮▮▮▮ using ▮▮▮▮▮▮**

49.     On October 4, 2022, CS 1 contacted telephone number ▮▮▮▮▮▮ to arrange a drug transaction with ▮▮▮▮▮▮▮▮▮ was operating a rental vehicle with a Florida registration of GWIX68. ▮▮▮▮▮ directed the CS 1 to the area of North 19th Street and West Olive Street, Milwaukee, Wisconsin. ▮▮▮▮▮ completed the transaction with CS 1 through the doors of CS 1'S vehicle and ▮▮▮▮▮▮▮▮. CS 1 confirmed ▮▮▮▮ was the individual who completed the transaction and identified the front seat passenger in the ▮▮▮ as JACKSON. ▮▮▮▮ completed the transaction with CS 1 and sold 28.8 grams of a substance testing positive for methamphetamine and 11.0 grams of a substance testing positive for fentanyl in exchange for $1,300.00.

21

50.      ████ was identified by CS 1 as the person who completed the transaction along with case agents who reviewed video obtained by CS 1 during the transaction and were able to compare tattoos on ████ arms to tattoo's that were documented by the Wisconsin DOC, confirming ████ as the operator.

51.      CS 1 later received a call from ████ after the transaction asking if CS 1 was working with the police because he did not want to get set up and "has a family".

52.      Case agents were able to obtain the rental agreement from Avis rental, which showed Kennecia TERRY as the individual who rented the vehicle. TERRY was also the registered owner of the Escape utilized by ████ in a previous transaction.

       **e.      Controlled Buy June 14, 2023, with Deangelo JACKSON and ████ using ████**

53.      On June 14, 2023, CS 1 did complete a controlled transaction with ████ and Deangelo JACKSON.

54.      CS 1 contacted telephone number ████ to arrange a controlled buy of drugs from ████ directed CS 1 to an alley in between North 19th Street and North 19th Place, just south of West Congress Street, Milwaukee, Wisconsin. ████ was operating a ████ which was registered to ████ asked CS 1 if CS 1 had a scale and CS 1 did not. At that time CS 1 observed JACKSON exit the rear of an unidentified residence and walk up to the ████ with a scale ████ then completed the transaction with CS 1 and sold 18.9 grams of a substance testing positive for cocaine and 5.3 grams of a substance testing positive for fentanyl in exchange for $700.00. ████ was identified by CS 1 as the person who completed the transaction along with JACKSON who assisted ████ with bringing him a scale to weigh out the narcotics that were purchased. Case agents identified JACKSON as the individual who assisted

22

██████ as well during the transaction.

**f.    Controlled Buy June 20, 2023, with Deante BRUCE using 414-419-4427**

55.    On June 20, 2023, a controlled transaction between COLLINS and an agent acting in an undercover capacity (UC 2) was planned.  Prior to the transaction taking place, case agents had CS 3 place a call to COLLINS at COLLINS's DTO telephone number 414-419-4427.  COLLINS was not the individual who answered the phone, which case agents determined based on review of prior jail calls.  CS 3 also indicated the person was not COLLINS but someone CS 3 knew as "nephew."  CS 3 arranged for a transaction of heroin and cocaine in exchange for $350.00.  Once the call was complete, CS 3 stated that the "Nephew" answered and would likely complete the transaction.  During the call, CS 3 informed the "Nephew" that he/she could not make it down and would be sending someone else instead.  The "Nephew" stated that the other person could come down and directed CS 3 to have that person come to the area of North 42nd Street and North Sherman Boulevard, Milwaukee, Wisconsin and to call the "Nephew" when that person was close.

56.    UC 2 then traveled to the area and contacted the "Nephew" at telephone number 414-419-4427 line.  "Nephew" directed the UC to the alley between North 46th Street and North 47th Street, just north of West Fiebrantz Avenue, Milwaukee, Wisconsin.  UC 2 subsequently exited his/her vehicle and walked into the alley and observed a black Honda Civic bearing Wisconsin license plate AMR- 4746 (Civic) parked in the alley.  UC 2 noted that there were two individuals in what seemed to be a line at the front driver's side window.  UC 2observed the operator conduct two hand-to-hand transactions with this individual.  UC 2 then walked up to the operator, who was alone in the vehicle.  UC 2 purchased suspect heroin and cocaine from the operator.  UC 2 also noted that there was at least one other person behind him/her, who appeared

to be waiting to purchase narcotics as well. After completing the transaction, UC 2 returned to his/her vehicle and met with case agents after leaving the area.

57.     UC 2 turned over the suspected heroin and cocaine to case agents and indicated the individual who completed the transaction was a younger, black male, with a tattoo of the name "Tasha" on his right arm. The suspected heroin and cocaine were later tested and weighed. The net weight of the suspected heroin 2.1 grams and tested positive for fentanyl. The net weight of the cocaine was 1.4 grams and tested positive for cocaine.

58.     Case agents reviewed used Wisconsin Department of Correction (DOC) records, booking photos and Wisconsin Department of Transportation (DOT) photos to identify "Nephew." Based on the review of these databases, case agents believed "Nephew" was BRUCE (DOB XX/XX/1997). UC 2 was provided Wisconsin DOT and public viewable social media photos of BRUCE and verified BRUCE as the individual who completed the transaction with UC 2 and was the operator of the Honda Civic. Case agents learned that BRUCE was on probation in Wisconsin for a felony possession of narcotic drug and a misdemeanor charge of carrying a concealed weapon regarding Milwaukee County Court Case Number 2021CF004261.

59.     From review of Wisconsin DOC records, case agents learned that BRUCE provided a residence address of 9261 West Allyn Street, Unit #F, Milwaukee, Wisconsin. Also, BRUCE provided his employer as Cellular Journie, COLLINS's cell phone store, which is located at **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)**. Case agents also review Wisconsin DOT in which COLLINS has a listed address of 9261 West Allyn Street, Unit #F, Milwaukee, Wisconsin.

　　　　**g.     Controlled Buy June 27, 2023, with Quin COLLINS using 414-419-4427**

60.     On June 27, 2023, UC 2 contacted telephone number 414-419-4427.  COLLINS

picked up telephone number 414-419-4427, which case agents were able to determine based on

review of prior calls by COLLINS.  COLLINS instructed UC 2 to "come to the east side" when

questioned if they could meet by UC 2.  As UC 2 approached the general vicinity of the East Side

of Milwaukee, he/she contacted telephone number 414-419-4427.  Based on the voice it appeared

to be COLLINS that was using telephone number 414-419-4427.  COLLINS instructed UC 2 to

go to the area of North 19th Street and West North Avenue, Milwaukee, Wisconsin.  UC 2 traveled

to that location and subsequently parked in the area of North 19th Street and West Monroe Street.

A black Toyota Rav 4, bearing Arizona license plate CWN-7763 (Rav 4), pulled up next to UC 2

and rolled the front passenger window down slightly and instructed UC 2 to follow.  UC 2 then

followed the Rav 4, to an alley between North 18th Street and North 19th Street just south of West

Monroe Street.  UC 2 exited his/her vehicle and approached the front driver's side door of the Rav

4.  The operator appeared to be alone inside the vehicle according to UC 2, but the operator only

slightly opened the door during the transaction.  UC 2 stated that he/she observed a large bag of

marijuana and a plastic bag containing a tan rock like substance believed to be heroin/fentanyl on

the lap of the operator.   The operator then stated that he did not have any "Tina." Based on my

training and experience, I know "Tina" to be street slang for methamphetamine.  UC 2 then

informed the operator he/she was looking for "boy" and completed a purchase of heroin/fentanyl

for $400.00.

61.     The substance was later weighed and tested by case agents.  The weight was

determined to 5.4 grams and tested positive for fentanyl.  UC 2 did not see COLLINS face during

the interactions due to the tint and manner in which the door was opened during the transactions.

However, UC 2 was able to see multiple tattoos on the right arm of driver, which were very distinct.

UC 2 later reviewed photos of COLLINS, via COLLINS's public Instagram page. After reviewing photos on COLLIN's Instagram page, which showed COLLINS's tattoos, UC 2 confirmed that the individual he/she conducted the transaction with was in fact COLLINS based on the similar tattoos.

62.    Case agents reviewed audio from the recorded calls and recording device that was activated during the transaction. After hearing the voice of the operator on the call and during the transaction, case agents believe that it was COLLINS based on the familiarity of COLLINS's voice.

63.    Case agents and members of the surveillance team followed COLLINS after that transaction and witnessed one additional hand to hand transaction between COLLINS and an unknown individual shortly after the transaction with UC 2 on West Highland Avenue, Milwaukee, Wisconsin.

64.    Case agents determined that Rav 4 used by COLLINS during the transaction was rented through Avis/Budget Rental. Case agents identified that Avis/Budget Rental was also used on two previous rental vehicles operated by COLLINS. Later, on June 27, 2023, case agents received information from Avis/Budget that the individual on the rental agreement was Brianna MADDEN, who is the girlfriend of COLLINS. MADDEN also was the listed individual on the two previous rental agreements as well. MADDEN listed her address as **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1),** and a phone number of 414-349-3267. Case agents know that **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1),** is a valid address for MADDEN and COLLINS. The rental agreement was valid through July 6, 2023.

> **h.    Controlled Buy July 12, 2023, with Kevin WINSTON using 414-419-4427**

65. On July 12, 2023, UC 2 contacted 414-419-4427 in anticipation of completing a transaction with BRUCE or COLLINS. UC 2 went to the meet location behind a Walgreen's located at 5115 West Capitol Drive, Milwaukee. Wisconsin. During this transaction, UC 2 completed a controlled transaction with an individual identified as Kevin D. WINSTON, who was later identified with his photo from Wisconsin DOT. During the transaction UC 2 purchased 6.8 grams of a substance that later tested positive for fentanyl.

66. WINSTON was alone during the transaction and was operating a Nissan Rogue bearing Wisconsin license plate ARE-7654 (Rogue), which did not have a vehicle associated to that registration through the Wisconsin DOT. Case agents later learned that the Rogue had been involved in an auto accident in the City of Milwaukee on March 4, 2023, and it was documented that WINSTON was the owner of the Rogue during the investigation. Case agents then learned that WINSTON has a listed Wisconsin DOT address of 9261 Allyn Street, Milwaukee, Wisconsin, which is a former address used by COLLINS, as previously described. 9261 Allyn Street, Milwaukee, Wisconsin was the address previously reported by BRUCE to agents with the Wisconsin DOC. Based on review of law enforcement databases, case agents believe that WINSTON and COLLINS are related, and it is believed that they share the same mother, making them biological half-brothers.

### i. Controlled Buy July 14, 2023, with Kevin TENNER using 414-627-3832

67. On July 14, 2023, CS 1 purchased 7.9 grams of fentanyl and 29.0 grams of cocaine from an individual identified later as Kevin TENNER.

68. During this transaction CS 1 called telephone number ▉▉▉▉▉▉▉, which is a previous number that CS 1 used to complete drug transactions with ▉▉▉▉▉ JACKSON. CS 1 agreed to meet with the DTO member using telephone number ▉▉▉▉▉▉ in the area of North

27

72nd Street and West Hampton Avenue, Milwaukee, Wisconsin. CS 1 went to the location and meet with TENNER. TENNER was observed operating ███████. TENNER provided CS 1 the suspected controlled substances in exchange for cash $1800. During the drug transaction, TENNER informed CS 1 that he was the "new morning guy."

69. Following the drug transaction, CS 1 provided case agents with the suspected controlled substances. One substance weighed 7.9 grams and field tested positive for fentanyl. The other weighed 20 grams and field tested positive for cocaine.

70. Case agents reviewed the video recording of the drug transaction and law enforcement databases. Based on the review, case agent identified the DTO member for this drug transaction as TENNER. CS 1 later confirmed with a photo that TENNER was the individual that sold the CS 1 the fentanyl on July 14, 2023.

      **j.**      **Controlled Buy July 31, 2023, with Kevin TENNER using 414-627-3832**

71. On July 31, 2023, CS 1 contacted telephone number 414-627-3832 to arrange a controlled drug transaction of 7.3 grams of methamphetamine and 26.3 grams of heroin. CS 1 was told to go to the area of North 49th Street and West Garfield Avenue, Milwaukee, Wisconsin. CS 1 went to the area and meet with TENNER. TENNER was operating a 2017 Hyundai Tucson, bearing Wisconsin license plate AFB-9806 (Tucson). TENNER provided CS 1 with the suspected controlled substances in exchange for $2,500.00. Case agents later learned that Hyundai Tucson was registered to Tiandra CLARK. Based on review of law enforcement databases, CLARK had previously used 3226 North 33rd Street, Milwaukee, Wisconsin. Based on review of law enforcement databases, case agents are aware that TENNER has also used address 3226 North 33rd Street, Milwaukee, Wisconsin.

72.     Following the controlled drug transaction, CS 1 provided case agents with the suspected controlled substances.  Case agents tested the substances.  The one substance weighed 26.3 grams and tested positive for fentanyl.  The other substances weighed 7.3 grams and tested positive for methamphetamine.

**k.      Controlled Buy August 24, 2023, with Deante BRUCE using 414-419-4427**

73.     On August 24, 2023, UC 2 contacted 414-419-4427 in anticipation of completing a drug transaction with BRUCE, COLLINS, or WINSTON.  UC 2 went to the agreed upon meet location behind Bethel AME Church located at 4103 North 35th Street, Milwaukee, Wisconsin.

74.     During this transaction, UC 2 completed a controlled buy of narcotics with BRUCE, who case agents previously identified.  BRUCE was operating the Rogue, which did not have a vehicle associated to that registration through the Wisconsin DOT.  Case agents are familiar with the Rogue from previous transactions and are aware that the Rogue is known to be operated by WINSTON.

75.     UC 2 did observe that there was an unknown black male in the front passenger seat of the Rogue, who UC w2 as not familiar with and had no contact with during the drug transaction. BRUCE provided UC 2 a white plastic surgical glove that contained the controlled substance inside of it during the transaction in exchange for money.  During the transaction UC 2 purchased 14.8 grams of a substance that later tested positive for fentanyl.

**l.      Controlled Buy September 13, 2023, with Quin COLLINS using 414-419-4427**

76.     On September 13, 2023, UC 2 contacted 414-419-4427 in anticipation of completing a transaction with BRUCE, COLLINS, or WINSTON.  UC 2 went to the meet location 2232 North Oakland Avenue, Milwaukee, Wisconsin.  During the initial call to 414-419-4427 and

29

follow up calls with 414-419-4427, case agents believed that the individual answering 414-419-4427 was in fact COLLINS based on the familiarity with COLLINS voice.

77.     Case agents had set up pre-surveillance in the area of COLLINS residence located at **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1).**  After UC 2 had arrived in the area of 2232 North Oakland Avenue, case agents observed a black Toyota Camry bearing Illinois license plate FP215094 (Camry), exit the driveway of **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1).**  Case agents followed the Camry to the area of 2232 North Oakland Avenue, which is approximately one-half mile distance from COLLINS residence, of **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)**.

78.     UC 2 then received a call from 414-419-4427 and was directed to follow the Camry, which eventually stopped in an alley way in the area of North Farwell Avenue and East Lafayette Place, Milwaukee, Wisconsin.  UC 2 then exited the vehicle and completed the drug transaction with COLLINS, who UC 2 was familiar with and positively identified COLLINS.  UC 2 stated that COLLINS was the only individual in the Camry.

79.     Case agents continued surveillance on COLLINS after the drug transaction and confirmed COLLINS was indeed the operator of the Camry when COLLINS stopped and exited the Camry at a Cheb Hut Toasted Subs located at 2907 North Oakland Avenue, Milwaukee, Wisconsin.

80.     Case agents learned that the Camry was a rental vehicle from Avis/Budget rental.  Case agents later received information from Avis/Budget that the person listed on the rental agreement for the Camry was Brianna MADDEN, COLLINS' girlfriend as previously described, and resides at the address **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)**, which is the listed address on the rental agreement.  The Camry was rented through September

30

30, 2023, by MADDEN.

81.     UC 2 later turned over the substance purchased form COLLINS, which later tested positive for fentanyl, which weight 14.8 grams in exchange for $1,000.00.

**m.     Controlled Buy on October 6, 2023, with Shannon WILDER using 414-419-4427**

82.     On October 6, 2023, UC 2 contacted 414-419-4427 in anticipation of completing a transaction with BRUCE, COLLINS, or WINSTON.  UC 2 was in contact with telephone 414-419-4427 several times prior to the transaction and during these calls, neither UC 2 nor case agents had any familiarity with the individual utilizing the 414-419-4427 line.  UC 2 was directed by the unknown individual to respond to North Booth Street and East Meinecke Avenue in Milwaukee, Wisconsin to complete the anticipated transaction of 25-30 grams of fentanyl in exchange for $2,100.00.

83.     After arriving in the area, UC 2 was approached by a gray Audi Q5 bearing Wisconsin Fleet license plate 15664AFT (Audi).  The operator, described by UC 2 as an unknown heavy set black male with dreads, directed UC 2 to an alley way located east of North Booth Street.  UC 2 exited their vehicle and approached the driver's side window of the Audi and completed the transaction with the operator, who was the sole occupant of the Audi.  The suspected fentanyl obtained from the target later tested positive for fentanyl and case agents obtained a total weight of 25.6 grams.

84.     After the transaction, case agents learned the registration for the Audi was through Enterprise car rental and later obtained a copy of the rental agreement from Enterprise.  The only individual listed on the rental agreement is Shannon D. WILDER, with a listed address of 3234 North Palmer Street, Milwaukee, WI, and a DOB of XX/XX/1989.  Case agents are aware that WILDER is a relative of COLLINS, believed to be cousins based on information learned in the

31

investigation and through law enforcement databases.

85. Case agents reviewed video obtained by UC 2 during the transaction and after reviewing a still screenshot of the target who completed the transaction, case agents were able to positively identify WILDER after reviewing a Wisconsin DOT driver's license photo of WILDER.

86. Case agents were conducting surveillance on October 23, 2023, and observed Shannon WILDER, in the area of COLLINS residence, located at **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1).** Case agents were monitoring location data being received from COLLINS's DTO telephone number 414-419-4427 and followed WILDER, who was operating the Audi, to COLLINS's residence, **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1).** While outside **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)**, case agent observed what appeared to be a phone handed off between WILDER and COLLINS after COLLINS exited **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** and met with WILDER. Case agents continued to monitor court authorized electronic surveillance of COLLINS's DTO telephone number 414-419-4427 and followed COLLINS. The court authorized electronic surveillance of COLLINS's DTO telephone number 414-419-4427 and the updated physical surveillance of the location of COLLINS, was consistent with COLLINS being in possession of the COLLINS's DTO telephone number 414-419-4427 at the time. Based on my training, experience, and investigation into the DTO, case agents believe the DTO is sharing drug customer telephone lines with each other. This is a technique used by DTO to ensure someone is also available to sell controlled substances for the DTO and to assist members of the DTO to make a greater profit. Also, this technique can be used in an attempt to evade law enforcement and isolate DTO members possible exposure to criminal charges.

### n. Controlled Buy on November 16, 2023, with Deante BRUCE and Maurice HAMPTON Jr using 414-419-4427

87. On November 16, 2023, UC 2 contacted telephone number 414-419-4427 in anticipation of completing a transaction with the COLLINS' DTO. UC 2 was in contact with the telephone number 414-419-4427 several times prior to the transaction. During these calls, neither UC 2 nor case agents had any familiarity with the individual utilizing telephone number 414-419-4427. UC 2 was directed by the unknown individual using telephone number 414-419-4427 to respond to the "east side" to complete the anticipated transaction of 25-30 grams of fentanyl in exchange for $2,300.00. UC 2 was eventually directed to the area of North 10th Street and West North Avenue, Milwaukee, Wisconsin

88. After arriving in the area, UC 2 parked behind a blue Honda Odyssey Minivan, bearing Wisconsin license plate, AUN-7847 (Odyssey), which was parked in an alley located between North 10th and North 11th Street, just north of North Lindsey Street, Milwaukee, Wisconsin. UC 2 then exited their vehicle and completed the transaction with BRUCE, who was the front seat passenger of the Odyssey. The operator of the Odyssey was later identified as HAMPTON Jr. Based on the investigation into COLLINS and review of publicly viewable social media and law enforcement databases, case agents believe HAMPTON Jr. is a cousin of COLLINS.

89. During the transaction, UC 2 purchased 28.9 grams of a substance, which later testing positive for fentanyl.

### o. December 6, 2023, contact with ███████ using ████████ and ████

90. On December 6, 2023, UC 1 was involved in a separate investigation was at a stop light in the City of Milwaukee. A vehicle identified as black 2024 Chevrolet Equinox, bearing

Wisconsin Fleet plate 20523AFT (Equinox), which was determined to be a rental vehicle, pulled next to UC 1's vehicle. At that point the two occupants, both being black males, began conversing with UC 1 and exchanged numbers with UC 1. UC 1 stated the front seat passenger provided his name, ██████, and obtained two numbers from ██████ and the front seat passenger. Those numbers were identified as ████████ and ████████0.

     91.     Shortly after the contact, UC 1 received a call from the subjects and was instructed to "pull over for a free sample". UC 1 pulled over and exited their vehicle and approached the Equinox which had pulled directly in back of UC 1's vehicle. UC 1 obtained a "sample" of suspected fentanyl from the front seat passenger and returned to their vehicle and left the area. The sample was later weighed and tested, and a weight of 1.1 grams was obtained and the substance later tested positive for fentanyl. UC 1 was able to obtain video surveillance with still images of the vehicle and the two subjects inside (Figures 1, 2, and 3).



(Figure 1)                         (Figure 2)

34



(Figure 3)

92.     Based on the prior investigation, case agents are familiar that ███████ goes by the nickname ███████. After reviewing still shot images obtained by UC 1, case agents confirmed that the individual who provided the free sample to UC 1 and identified himself as ███████ is ███████. Case agents are still attempting to verify the identity of the operator of the Equinox.

93.     Case agents have also previously identified the phone number ███████ as a number being used by ███████.

### q.     Attempted controlled buy with COLLINS DTO using 414-419-4427 on December 8, 2023

94.     On December 8, 2023, UC 2 attempted to conduct a controlled transaction with the user of 414-419-4427. UC 2 was attempting to contact the DTO telephone number 414-419-4427, but there was no answer to either the calls or texts. Based on the court authorized electronic surveillance, it appeared the DTO telephone number 414-419-4427 was near **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7).**

95.     Case agents conducted surveillance in the area of **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** during this time. Case agents observed the Rogue, parked in front of **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7),**

35

**Cellular** Journie. This is the same Rogue WINSTON used during the controlled drug transaction on July 12, 2023.

96.     During surveillance, case agents observed the Rogue leave the area and return a short time later on multiple occasions. Case agents were monitoring court authorized electronic surveillance of telephone number 414-419-4427 and observed that the location of telephone number 414-419-4427 was consistent with the movements made by the Rogue. Case agents observed the Rogue leave the area of Cellular Journie (**2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7),** multiple times and was met with vehicles in nearby alley ways for a short term, before returning to the area of **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)**. Court authorized electronic surveillance showed similar movement of telephone number 414-419-4427. Based on my training and experience, the short-term contacts with the Rogue were consistent with short term contacts for drug transactions and consistent with the short-term contacts UC 2 had with members of the DTO when purchasing drugs from the DTO.

97.     UC 2 who was going to conduct the drug transaction attempted multiple calls to telephone number 414-419-4427, but there was no answer and no response to text messaging. Case agents continued to monitor court authorized electronic surveillance of telephone number 414-419-4427 and observed that there was constant activity including contacts with Luz Torres and Trenton SWAN, which are two individuals known to use telephone number 414-419-4427 and have connections to narcotics. After several attempts to contact telephone number 414-419-4427, case agents terminated the attempted drug transaction and were unable to locate the Rogue.

### C.     Review Of Call Records Associated to DTO

98.     As part of the investigation into COLLINS DTO, case agents reviewed call detail records and jail calls to identify DTO members' numbers and determine connections between

36

members. Case agents believe, based on the call detail and review of jail calls, that the records demonstrate that DTO members are activity still engaged in drug trafficking.

a. **Call Detail Records COLLINS's telephone number 414-614-5396 between September 2022 to April 2023**

99. Between September 23, 2022, and October 27, 2022, COLLINS's telephone number 414-614-5396 contacted FRANKLIN's identified telephone number 414-416-0868 a total of 32 times.

100. Between January 1, 2023, and February 10, 2023, COLLINS's telephone number 414-614-5396 contacted FRANKLIN's other identified telephone number 414-519-2009, a total of 20 times.

101. Between January 14, 2023, and February 10, 2023, COLLINS's telephone number 414-614-5396 contacted FRANKLIN's telephone 414-254-8676 a total of 5 times.

102. Between December 13, 2022, to March 29, 2023, COLLINS's telephone number 414-614-5396 contacted Shannone BROWN's identified telephone number 414-551-8136 a total of 11 times. This includes six times on March 28, 2023, the day after the homicide of RODRIGUEZ-PEREZ.

103. Between September 10, 2022, and December 9, 2022, COLLINS's telephone number 414-614-5396 contacted RODRIGUEZ-PEREZ's identified number telephone number 414-426-0464 a total of 26 times.

104. Between November 10, 2022, and March 19, 2023, COLLINS's telephone number 414-614-5396 contacted RODRIGUEZ-PEREZ's telephone number 414-807-2942, a total of four times.

105. Between January 20, 2023, and January 26, 2023, COLLINS's telephone number 414-614-5396 contacted RODRIGUEZ-PEREZ's identified telephone number 512-940-1862 a

total of four times. On March 28, 2023, the day after the homicide of RODRIGUEZ-PEREZ, COLLINS's telephone number 414-614-5396 contacted RODRIGUEZ-PEREZ's girlfriend's identified number 262-914-4276, a total of two times.

106. Around March 29, 2023, COLLINS's telephone number 414-614-5396 was dropped. Based on my training and experience, when incidents occur that law enforcement involvement happens, like the homicide of a ADTO member, those closely connected to criminal conduct of individuals identified by law enforcement will often be concern that they may be identified through evidence obtained by law enforcement, like cellphones. Therefore, those individuals, like other ADTO members or drug sources, will often change telephone numbers and/or methods and patterns in an attempt to evade law enforcement.

      b.     **Jail Calls with Collin's telephone numbers 414-614-5396 and 414-588-2760**

107. Case agents listened to almost a hundred Wisconsin Department of Corrections (DOC) recorded jail calls between COLLINS's telephone numbers 414-614-5396 and 414-588-2760 and inmates. These recorded jail calls were made between January 2023 to present. Case agents became familiar with COLLINS's voice based on these recorded jail calls.

108. For example, after COLLINS's dropped telephone number 414-614-5396 in March 2023, case agents attempted to determine his new number. Case agents reviewed records with DOC and as of June 23, 2023, 414-588-2760 was registered through the Wisconsin DOC to COLLINS. This information is received via payment history made to various accounts with the DOC.

109. Based on Wisconsin DOC records, case agents located a call to telephone number 414-588-2760 on June 23, 2023, at 3:38 pm from the Redgranite Correctional Institution. The call was placed from the account of inmate Anthony L. James. The individual's voice on the 414-588-

38

2760 line appeared to be COLLINS. Based on prior record jail calls, case agents are familiar with COLLINS's voice did confirm that COLLINS was the individual on the call. During the call, the inmate asked COLLINS how his vacation was. Based on the investigation into COLLINS, case agents were aware that COLLINS had been in Houston, Texas and returned on June 18, 2023, or June 19, 2023.

110. From June 1, 2023, thru June 23, 2023, there were 33 attempted calls from inmates with Wisconsin DOC to COLLIN's telephone number 414-588-2760 with 12 of the calls connecting. During these 12 connected calls, the same individual, believed to be COLLINS, appears to be the person on telephone number 414-588-2760. As noted previously, Case agents believe that the person is in COLLINS based on the familiarity of COLLINS voice and DOC information regarding the telephone number.

111. Case agents obtained recorded prison calls through the Wisconsin DOC and identified calls made from multiple accounts on July 6, 2023, July 11, 2023, July 16, 2023, and July 23, 2023, to COLLIN's telephone 414-588-2760. The calls were all incoming to COLLIN's telephone 414-588-2760 from the persons currently in custody. Case agents listen to the calls and recognized COLLINS's voice as the person answer the prison calls on telephone 414-588-2760. Case agents determined COLLINS was the person using telephone 414-588-2760 based on the conversation and familiarity of COLLINS's voice. There were no calls that were connected and recorded where someone other than COLLINS's answered telephone 414-588-2760 from prison that were reviewed by case agents.

112. Case agents reviewed recorded calls placed from the Wisconsin DOC prison system and noted that between October 6, 2023, and October 23, 2023, there were several calls placed from various inmate accounts to COLLINS's telephone number 414-588-2760. Case agents

39

listened to several recordings and on October 23, 2023, at 1:47 pm a call was placed to 414-588-2760 from inmate Deonte Mcafee. Mcafee had a lengthy conversation with an individual case agents know to be COLLINS based on familiarity with his voice from previous calls and transactions. On October 8, 2023, inmate Dandre Wilder placed a call to COLLINS's telephone number 414-588-2760 and spoke with COLLINS, again case agents are familiar with COLLINS voice and were able to conform COLLINS was the individual on the 414-588-2760 line.

113. Case agents located 124 contacts between COLLINS's telephone number 414-588-2760 and Wisconsin DOC inmates between November 2, 2023, and November 28, 2023. These contacts were consistent with calls that have been reviewed by case agents where inmates from different Correctional Institutions throughout Wisconsin. In reviewing the calls, case agents determined that COLLINS was still the user of telephone number 414-588-2760. This was determined based on the content of the calls and by case agents recognizing his voice.

114. Case agents located 32 contacts between COLLINS's telephone number 414-588-2760 and Wisconsin DOC inmates between November 29, 2023, and December 26, 2023. These contacts were consistent with calls that have been reviewed by case agents where inmates from different Correctional Institutions throughout Wisconsin. Case agents reviewing the jail calls verified that COLLINS was the person using COLLINS's telephone number 414-588-2760, based on previously hearing COLLINS's voice during controlled buys and other jail calls.

115. Case agents located 102 contacts between COLLINS's telephone number 414-588-2760 and Wisconsin DOC and Milwaukee County House of Corrections inmates between December 28, 2023, and January 22, 2024. These contacts were consistent with calls that have been reviewed by case agents with inmates from different correctional institutions throughout Wisconsin. Case agents reviewing the jail calls verified that COLLINS was the person using

40

COLLINS's telephone number 414-588-2760, based on previously hearing COLLINS's voice during controlled buys and other jail calls.

   **c.**  **Call Detail Records COLLINS's DTO telephone number 414-419-4427, September 2022 to June 2023**

  116. Case agents also identified telephone number, 414-419-4427, contacted to COLLINS. Based on the investigation, case agents determined telephone number 414-419-4427 was a drug line, passed among DTO members. Case agents reviewed call detail records of MERIWETHER ADTO and determined that COLLIN's DTO telephone number 414-419-4427 had multiple contacts with number associated to the MERIWETHER ADTO and others associated with COLLINS.

  117. Between September 12, 2022, and March 23, 2023, there were 119 contacts between COLLIN's DTO telephone number 414-419-4427 and telephone number 414-614-5396. As described above, COLLINS previous telephone number was 414-614-5396. This is consistent with 414-614-5396 being changed or dropped by the ADTO after the homicide of Daniel RODRIGUEZ-PEREZ on March 27, 2023.

  118. Between January 1, 2023, and May 25, 2023, there were 95 contacts between COLLIN's DTO telephone number 414-419-4427 and telephone number 414-349-3267. Case agents identified 414-349-3267 as a telephone number used by Briana MADDEN. Case agents reviewed law enforcement databases which indicated telephone number 414-349-3267 was connected to MADDEN. Also, during the investigation, COLLINS was observed operating rental vehicles. Case agents obtained records that indicated MADDEN was the individual that rented the vehicles COLLINS operated and provided telephone number 414-349-3267 to the rental company.

  119. Between March 16, 2023, and June 11, 2023, there were 281 contacts between

41

COLLIN's DTO telephone number 414-419-4427 and telephone number 414-524-9899. Based on a review of law enforcement database and forensic extractions of RODRIGUEZ-PREREZ's and FRANKLIN's cellphones, case agents believe 414-524-9899 is used by Luz Torres. Torres's telephone 414-524-9899 had been in contact with several different targets of the MERIWETHER ADTO, including Daniel RODRIGUEZ-PEREZ, and Dontrell FRANKLIN. Based on the investigation into the MERIWETHER ADTO, Torres is believed to be involved in renting vehicles for members of the ADTO and possibly using heroin/fentanyl.

120.     Between April 5, 2023, and June 9, 2023, COLLIN's DTO telephone 414-419-4427 had 28 contacts with telephone number 414-588-2760, which was COLLINS's after RODRIGUEZ-PEREZ's murder.

121.     Case agents also learned that there was a suspected fatal heroin/fentanyl overdose on June 10, 2023, Waukesha, Wisconsin. [Waukesha Police Department (WKPD) IR #23-22176]. Case agents learned that WKPD completed a Forensic Download of the victim's cell phone and observed "drug related messages" between the victim and COLLIN's DTO telephone number 414-419-4427. Case agents learned that the victim had sent several messages to COLLIN's DTO telephone number 414-419-4427 on June 3, 2023. The messages were consistent with the victim attempting to purchase heroin from the user of COLLIN's DTO telephone number 414-419-4427. There was no response from COLLIN's DTO telephone number 414-419-4427. Case agents believe that they have identified a separate source of the heroin which led to the fatal overdose of the victim. The name associated with COLLIN's DTO telephone number 414-419-4427 in the victim's phone was identified as "aaa".

### d.     Call Detail Records COLLINS's DTO telephone number 414-419-4427, June 2023 to July 2023

122.     Case agents reviewed COLLINS's DTO telephone number 414-419-4427 call

42

detail records from June 30, 2023, through July 24, 2023, which had 11,172 contacts. Case agents did not identify 7,967 of the contacts.

123. COLLINS's DTO telephone number 414-419-4427 had 29 contacts to telephone number 414-524-9899. Case agents reviewed cellphones subscriber information for telephone number 414-524-9899, which lists to Luz Torres.

124. Case agents also observed that COLLINS's DTO telephone number 414-419-4427 had 27 contacts with telephone number 414-349-3267. As previously described, case agents determined 414-349-3267 to be telephone used by Brianna MADDEN, COLLINS's girlfriend.

125. Case agents also observed COLLINS's DTO telephone number 414-419-4427 had 14 contacts with telephone number 414-588-2760. As previously described, 414-588-2760 has been identified as COLLINS's other telephone number.

### e. Call Detail Records COLLINS's DTO telephone number 414-419-4427, October 2023

126. Case agents reviewed court authorized electronic surveillance between COLLINS's DTO telephone number 414-419-4427 beginning on October 6, 2023. Between October 6, 2023, and October 23, 2023, case agents observed several noteworthy contacts. Case agents observed that there were 183 contacts between COLLINS's DTO telephone number 414-419-4427 and telephone number 813-897-0241. Based on review of law enforcement databased, case agents believe telephone 813-897-0241 is used by Trenton Swan. On July 27, 2023, law enforcement was investigating an overdose death in the town of Mukwonago. Swan was present during the incident and provided his telephone number of 813-897-0241. During the investigation Swan also admitted to being a "former" heroin/fentanyl addict. Based on the numerous contacts between telephone number 813-897-0241 and COLLINS's DTO telephone number 414-419-4427, case agents believe Swan is still likely using controlled substances and being sourced by the COLLINS

43

DTO.

127.     Case agents observed that COLLINS's DTO telephone number 414-419-4427 had
77 contacts with telephone number 414-524-9899, which as noted earlier is the number for Luz
Torres.  There were 16 contacts between COLLINS's DTO telephone number 414-419-4427 and
telephone number 414-349-3267, which is a number used by Brianna MADDEN.  There was a
total of 9 contacts between the COLLINS's DTO telephone number 414-419-4427 and
COLLINS's telephone number 414-588-2760.

   **f.** **Call detail records for COLLINS's DTO telephone number 414-419-
     4427 in November 2023.**

128.     Case agents reviewed cell phone records for COLLINS's DTO telephone number
414-419-4427 from November 2, 2023, through November 28, 2023.

129.     Case agents located 212 contacts between COLLINS's DTO telephone number
414-419-4427 and telephone number 813-897-0241, a known number for Trenton Swan.

130.     Case agents located 78 contacts between COLLINS's DTO telephone number 414-
419-4427 and telephone number 414-524-9899, a known number for Luz Torres.

131.     Case agents located 30 contacts between COLLINS's DTO telephone number 414-
419-4427 and COLLINS's telephone number 414-588-2760.

132.     Case agents located 11 contacts between COLLINS's DTO telephone number 414-
419-4427 and MADDEN's telephone number 414-349-3267.

133.     Additionally, case agents located 5 contacts between COLLINS's DTO telephone
number 414-419-4427 and telephone number 414-554-8059.    Case agents determined number
telephone number 414-554-8059 is associated with BRUCE after review of law enforcement
database and records.  BRUCE is the individual who completed a controlled transaction with UC
2 on June 20, 2023.

g. **Call detail records for COLLINS's DTO telephone number 414-419-4427 in December 2023**

134. Case agents reviewed cell phone records for COLLINS's DTO telephone number 414-419-4427 from November 29, 2023, through December 26, 2023.

135. Case agents located 13 contacts between COLLINS's DTO telephone number 414-419-4427 and COLLINS's telephone number 414-588-2760.

136. Case agents located eight contacts between COLLINS's DTO telephone number 414-419-4427 and Trenton Swan's telephone number 813-897-0241.

137. Case agents located eight contacts between COLLINS's DTO telephone number 414-419-4427 and Luz Torres's telephone number 414-524-9899.

138. Case agents located four contacts between COLLINS's DTO telephone number 414-419-4427 and MADDEN's telephone number 414-349-3267.

139. Case agents located five contacts between COLLINS's DTO telephone number 414-419-4427 and telephone 414-808-7873. Case agents reviewed law enforcement databased and determined telephone number 414-808-7873 was a personal number for WINSTON.

140. Additionally, case agents located two contacts between COLLINS's DTO telephone number 414-419-4427 and BRUCE's telephone number 414-554-8059.

h. **Call detail records for COLLINS's DTO telephone number 414-419-4427 in January 2024.**

141. Case agents reviewed cell phone records for COLLINS's DTO telephone number 414-419-4427 from December 29, 2023, through January 22, 2024.

142. Case agents located 20 contacts between COLLINS's DTO telephone number 414-419-4427 and COLLINS's telephone number 414-588-2760.

143. Case agents located 15 contacts between COLLINS's DTO telephone number 414-

45

419-4427 and MADDEN's telephone number 414-349-3267.

144.    Case agents located one contact between COLLINS's DTO telephone number 414-419-4427 and Trenton Swan's telephone number 813-897-0241.

145.    Case agents located three contacts between COLLINS's DTO telephone number 414-419-4427 and BRUCE's telephone number 414-554-8059.

146.    During this time period, case agents observed the number of calls to COLLINS's DTO telephone number 414-419-4427 decrease. Also, in mid-December 2023, the DTO did not answer UC 2's contacts in an attempt to purchase controlled substances. Case agents noted that there is still a significant amount of data being utilized by telephone number 414-419-4427, but it appears the actual calls utilizing traditional methods are decreasing. Case agents believe that this could be related to other applications that use data or Facetime being utilized by the DTO to conduct their transactions. Based on my training and experience, I know those engaged in drug trafficking will often use phone applications or Facetime in an attempt to evade law enforcement detection. Regardless, case agents still believe the information that is being received from telephone number 414-419-4427 still contains evidentiary value and based on the location of the line, it appears the activity is very similar to how it has been since case agents began receiving the data and conducting controlled drug transactions.

            i.    Call detail records for COLLINS's telephone 414-588-2760 between
                  June 2023 to July 2023

147.    Case agents reviewed the number 414-588-2760, which is a known number associated to COLLINS based on review of jail calls outlined above. While reviewing the call frequency report from June 30, 2023, through July 24, 2023, case agents observed 8, 320 contacts. Case agents were not able to identify 3, 407 of the contacts.

148.    Case agents observed COLLINS's telephone 414-419-4427 had 625 contacts with

46

MADDEN's telephone 414-349-3267.

149. Case agents observed COLLINS's telephone 414-419-4427 had 155 contacts with 414-852-2533. Case agents reviewed law enforcement databases and identified 414-852-2533 to be associated with ARMSTRONG. Case agents reviewed COLLINS's public social media (quianbacklibhib) which contains photos and videos of COLLINS. Case agents observed on COLLINS's public social media, ARMSTRONG and COLLINS mixing a substance believed to be "Lean" dated July 4, 2023. Case agents were able to identify it was ARMSTRONG after review of a photo from a law enforcement databased.

150. Case agents observed COLLINS's telephone 414-419-4427 had 124 contacts with BRUCE's telephone number 414-554-8059.

> ### j. Call detail records for COLLINS's telephone 414-588-2760 August 2023 to September 2023

151. Case agents reviewed call records obtained for COLLINS's telephone number 414-588-2760 between August 4, 2023, and September 24, 2023.

152. COLLINS's telephone number 414-588-2760 had 40 contacts in the same time frame with COLLINS's DTO telephone number 414-419-4427.

> ### k. Call detail records for COLLINS's telephone 414-588-2760 October 2023

153. Case agents reviewed court authorized electronic surveillance between COLLINS's telephone number 414-588-2760 between October 6, 2023, and October 23, 2023. Case agents observed several noteworthy contacts with COLLINS's telephone number 414-588-2760.

154. Case agents observed that there 762 contacts between COLLINS's telephone number 414-588-2760 and MADDEN's telephone number 414-349-3267.

155. There were 50 contacts with COLLINS's telephone number 414-588-2760 and

47

BRUCE's telephone number 414-554-8059.

156.    There were 30 contacts between COLLINS's telephone number 414-588-2760 and with telephone number 414-588-7377.  Based on information provided by CS 3, described in more detail below, case agents identified telephone number 414-588-7377 as another telephone used by COLLINS.  Case agents believe 414-588-7377 is another DTO drug customer line used by COLLINS and his DTO members to traffic narcotics based on the investigation.

157.    There were six contacts between COLLINS's telephone number 414-588-2760 and telephone number 414-534-2503.  Based on review of law enforcement databases, case agents believe telephone number 414-534-2503 is used by Shannon WILDER, who is a known relative and member of the DTO and an individual who sold fentanyl to UC 2 on October 6, 2023.

l.    **Call detail records for COLLINS's telephone number 414-588-2760 in November 2023.**

158.    Case agents reviewed the call records associated with COLLINS's telephone number 414-588-2760 from November 2, 2023, through November 28, 2023.

159.    During this time period, case agents noted that there were 30 contacts between COLLINS's telephone number 414-588-2760 and COLLINS's DTO telephone number 414-419-4427.

160.    Case agents located 250 contacts between COLLINS's telephone number 414-588-2760 and MADDEN's telephone number 414-349-3267.

161.    Case agents located 138 contacts between COLLINS's telephone number 414-588-2760 and ARMSTRONG's telephone number 414-852-2533.

162.    Case agents located 60 contacts between COLLINS's telephone number 414-588-2760 and BRUCE's telephone number 414-554-8059.

163.    Case agents located 20 contacts between COLLINS's telephone number 414-588-

48

2760 and WINSTON's telephone number 414-808-7873.

164.     Case agents located four contacts between COLLINS's telephone number 414-588-2760 and telephone number 414-430-7200. Based on review of law enforcement databases, case agents believe telephone number 414-430-7200 is also associated with Shannon WILDER.  Based on my training and experience, it is not uncommon for those engaged in drug trafficking to have multiple phones and to use those phones for their drug trafficking.

> **m.     Call detail records for COLLINS's telephone number 414-588-2760 in December 2023**

165.     Case agents reviewed the call records associated with COLLINS's telephone number 414-588-2760 from November 29, 2023, through December 26, 2023.

166.     During this time period, case agents noted that there were 46 contacts between COLLINS's telephone number 414-588-2760 and COLLINS's DTO telephone number 414-419-4427.

167.     Case agents located 67 contacts between COLLINS's telephone number 414-588-2760 and Rico SMITH's telephone number 414-627-1515.  As previously described in this affidavit and outlined by CS 2, case agents believe SMITH is a large drug trafficker in the Eastern District of Wisconsin.

168.     Case agents located 46 contacts between COLLINS's telephone number 414-588-2760 and MADDEN's telephone number 414-349-3267.

169.     Case agents located 59 contacts between COLLINS's telephone number 414-588-2760 and ARMSTRONG's telephone number 414-852-2533.

170.     Case agents located 6 contacts between COLLINS's telephone number 414-588-2760 and BRUCE's telephone number 414-554-8059.

171.     Case agents located one contact between COLLINS's telephone number 414-588-

49

2760 and WINSTON's telephone number 414-808-7873.

      **n.**    **Call detail records for COLLINS's telephone number 414-588-2760 in January 2024.**

172.    Case agents reviewed the call detail records associated with COLLINS's telephone number 414-588-2760 from December 28, 2023, through January 22, 2024.

173.    During this time period, case agents noted that there were 20 contacts between COLLINS's telephone number 414-588-2760 and COLLINS's DTO telephone number 414-419-4427.

174.    Case agents located 88 contacts between COLLINS's telephone number 414-588-2760 and ▓▓▓▓▓▓▓ telephone number ▓▓▓▓▓▓▓

175.    Case agents located 260 contacts between COLLINS's telephone number 414-588-2760 and MADDEN's telephone number 414-349-3267.

176.    Case agents located 64 contacts between COLLINS's telephone number 414-588-2760 and ARMSTRONG's telephone number 414-852-2533.

177.    Case agents located 16 contacts between COLLINS's telephone number 414-588-2760 and BRUCE's telephone number 414-554-8059.

178.    Case agents located four contacts between COLLINS's telephone number 414-588-2760 and WILDER's telephone number 414-534-2503.

179.    Between December 23, 2023, to January 22, 2023, case agents observed four contacts between COLLINS' telephone number 414-588-2760 and ▓▓▓▓▓ telephone number ▓▓▓▓▓▓▓

180.    Case agents located two contacts between COLLINS's telephone number 414-588-2760 and telephone number 414-388-9117, a known number for DTO member TENNER. Case agents identified telephone number 414-388-9117 being associated with TENNER, through law

50

enforcement databases and review of cellphones extractions following ███████ arrest, outlined below.

### D.    Law Enforcement Contacts with Members of the DTO.

181.    During the investigation, several individuals were arrested that had connections to the DTO or connections to the DTO's telephone numbers.

### a.    Arrest of Kevin WINSTON

182.    Case agents learned that on July 25, 2023, WINSTON was involved in an incident at the Bluemound Bowl located at 12935 West Bluemound Road, Brookfield, Wisconsin.

183.    During the ensuing investigation, WINSTON was subsequently arrested for one count of misdemeanor disorderly conduct, and was transported to the Waukesha County Jail, where he was booked and released. During the incident officers identified WINSTON's girlfriend as Alexus Eckford. While Officers were initially responding to the call, they were notified that the 911 caller had stated that WINSTON was in fact the suspect in this incident, and that he was "known to carry a firearm." Officers located WINSTON inside of his parked vehicle, which is only described in the report as a "gray Nissan SUV." WINSTON was charged for his conduct in Waukesha County Case 2023CM2092. WINSTON failed to appear for an initial appearance on December 28, 2023, and he currently has an active warrant for his arrest.

### b.    Arrest of Lewis Wilder and Diwuan Gates

184.    Case agents learned of the arrests of Lewis WILDER ("Lou") and Diwuan C. Gates ("Black") in November 2023. Gates was charged in Milwaukee County Case 2023CF5308 on November 20, 2023, with vehicle operator flee/elude officer; 2nd degree recklessly endangering safety; possession with intent to distribute cocaine, second or subsequent offense and party to a crime modifier; and resisting or obstructing an officer. L. Wilder was charged in Milwaukee

51

County Case 2023CF5309 on November 29, 2023, with resisting or obstructing an officer; possession w intent to distribute cocaine, with a party to a crime modifier; and felony bail jumping.

185. Case agents obtained the MPD police report, MPD IR #233190172, which stated that officers observed the occupants of a vehicle conduct what officers believed to be a hand-to-hand drug transaction and attempted to stop the vehicle. A vehicle pursuit was initiated and after a 3.47 miles chase, the vehicle was immobilized, and the occupants of the vehicle attempted to flee on foot but were apprehended a short time later. Gates was found to be in possession of $1,973.36 and L. Wilder was found to be in possession of $366.05. During a search of the vehicle, as well as the flight path of L. Wilder and Gates, the following items were located:

      i. One bag that contained 10.10 grams of a substance that field tested positive for fentanyl located in the flight path of L. Wilder;

      ii. 25 bindles that contained 23.80 total grams of a substance that tested positive for cocaine and fentanyl; and

      iii. Multiple phones.

186. Case agents monitored jail calls made to COLLINS's telephone number 414-588-2760. During the record jails calls, the arrests of "Lou" and "Black" were brought up multiple times to COLLINS. COLLINS informed multiple parties that he had spoken with them. Based on the content of the jail case, case agents believe "Lou" and "Black" refer to Gates and L. Wilder.

187. Case agents have noted that shortly after the pursuit the pattern of calls to the COLLINS's DTO's telephone number 414-419-4427 diminished. However, records for the COLLINS's DTO's telephone number 414-419-4427 indicated that there was a significant amount of data being used by the number. Based on my training and experience, this would indicate that the user or users of the COLLINS's DTO's telephone number 414-419-4427 are likely using

messaging apps or Facetime, which data that cannot always be retrieved by case agents. Based on my training and experience, this is a common tactic used by drug traffickers in an attempt to evade law enforcement.

      c.     **Arrest of** ███████████ **and Gequinn HARLAND**

188.    During the investigation into COLLINS, case agents identified ███████████ as a possible buyer of controlled substances from the COLLINS DTO.

189.    On January 5, 2024, ███████████ and Gequinn HARLAND were arrested by the Milwaukee Police Department (MPD). Case agents obtained a copy of the MPD report.

190.    The reports indicated that on January 5, 2024, MPD officers attempted to stop a 2023 ███████████, with ████ license plate ███████████ after observing a window tint violation. MPD attempted to stop the ███████████, Milwaukee, Wisconsin. The ████ fled, reaching speeds over 90 mph in residential areas, disregarded several stop signs, and traveled on residential sidewalk. The pursuit ended when the ████ crashed into a tree in front of a residence located at ███████████.

191.    ███████ was observed operating the ████. Following the crash, ███████ and HARLAND fled from the vehicle with another unidentified subject. After a foot pursuit both ███████ and HARLAND were arrested.

192.    During a search of ███████ person, officers located $12,840 in various denominations, in his pants. Based on my training, experience, and investigation into the DTO, this amount of money and the various denominations was consistent with proceeds from drug trafficking.

193.    Officers conducted a search of the ████ and located suspected controlled substances. Inside the front passenger pocket officers located two clear plastic bags. The first bag

contained a Brown/Gray substance which tested positive for methamphetamine (NARK 11-01), cocaine (NARK 11-07), heroin (NARK 11-11) and fentanyl (NARK 11-33). This substance weighed 14.26 grams. The second bag contained a white chunky substance which tested positive for methamphetamine (NARK 11-01 and 11-15), cocaine (NARK 11-07), and fentanyl (NARK 11-33). This substance weighed approximately 18.0 grams. On the driver's floorboard officers located one clear plastic bag containing two clear plastic bags. The first bag contained a white chunky substance which tested positive for methamphetamine, cocaine and fentanyl and weighed approximately 1.80 grams. The second bag contained 13 individual baggies with a brown chunky substance which tested positive for methamphetamine, cocaine, heroin, and fentanyl and weighed approximately 8.30 grams. On the front passenger floorboard was a double wrapped clear plastic bag containing a white chunky substance which tested positive for cocaine, fentanyl and methamphetamine and weighed approximately 3.52 grams. Officers also observed residual white powder throughout the front compartment of the ████, which was collected and tested positive for methamphetamine, cocaine and fentanyl and weighted collectively about 1.60 grams.

194.    Officers also located one bag of white powdery substance discarded in the rear backyard of ████████████████, Milwaukee, Wisconsin, which was directly in the flight path which ██████ and HARLAND fled on foot. The white powdery substance tested positive for fentanyl, cocaine and methamphetamine and weighed approximately 15.2 grams.

195.    Also, during the search of the ████, officers located nine cellphones also. Case agents confirmed that after the arrest of ████████ in January 2024, ████████ telephone number ████████████ was ported to a different phone, indicating that one of the cell phones located by officers after ██████ arrest was most likely the ████████ line.

54

196. On January 17, 2024, Honorable Judge William E. Duffin authorized a federal search warrant for all nine cellphones recovered during ███████ arrest. Case agents executed the warrant and located numerous conversations consistent with drug trafficking and connecting members of the DTO.

197. Officers learned the ███████ was a rental through Ean Holdings (Enterprise). Records indicted the Toyota was rented to a ████████████████████ of ████████████████████ from December 30, 2023, to January 13, 2024.

198. Gequinn HARLAND provided a *Mirandized* statement. HARLAND stated ███████ was the operator of the ██████ and that ██████ had picked him up earlier in the evening. HARLAND indicated that he has known ██████ for several years but did not know who the other occupant of the Toyota was. HARLAND informed officers of the fact that they had gone to a Clark Gas Station, located at 5505 West Lisbon Avenue, Milwaukee, Wisconsin.

199. Officers responded to the Clark Gas Station and reviewed surveillance video. The video showed that on January 5, 2024, at 2:02 pm, the ██████ pulled into the gas station parking lot. At 2:03 pm, ██████ exited the driver's side door of the ██████ and later returned at 2:07 pm. At this point, another individual, appeared to meet with ██████ inside the gas station, entered the ██████ for 30 seconds and then exited. Based on training, experience, and the items located inside the ██████ and on ██████ officers believed this conduct was consistent with a suspected drug transaction.

200. ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████

55

201. ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████

202.    Case agents did review recorded jail calls from the Milwaukee County Jail that were placed using ████████ personal identification number.  Case agents recognized ████████ voice from prior controlled buys on the calls outlined below.

203.    On January 6, 2024, ████████ called 414-865-7755 and spoke to an unidentified female and instructed her to "call Fat Pooh" who case agents identified as TENNER during the investigation.  She informed ████████ that TENNER was the one who told her that ████████ had been arrested. ████████ provided the number, "388-9117" for TENNER. TENNER failed to answer the call. ████████ then provided a second number for TENNER, "309-4557". ████████ then told her to call 852-2533, a number of case agents know to be ARMSTRONG, then immediately said never mind.  Shortly after, TENNER called the female and TENNER was put on speaker phone so ████████ and TENNER could communicate. ████████ asked if he "switched them", then mentioned the "old crib".  TENNER said he was doing it right now.  Based on my training, experience, and investigation into the DTO, this would be consistent with ████████ instructing TENNER to move the DTO's drug supply to a different location.  Further, the fact that ████████ is having others use three-way calls to TENNER, is consistent with ████████ attempting to prevent law enforcement from identify this call.

204.    On January 6, 2023, ████████ contacted the unidentified female at 414-865-7755 again. ████████ asked the female if "Cheese" was "locked up to" and she replied "No". ████████ then asked the female to call ARMSTRONG's telephone number 414-852-2533.  As part of the investigation into the DTO and ARMSTRONG, case agents learned that ARMSTRONG goes by

56

the nickname "Cheese". However, ███ then changed his mind and asked her to call "Fat Pooh" (TENNER) again. TENNER was again put on speaker phone and told ███ that "Cheese is good". After talking with TENNER, ███ instructed the female tell Fat Pooh to "get the 8852", because people who owed him money will be calling it. Case agents believe this is related to one of the DTO drug lines based on the message stating that someone who is owed money will be calling it. Case agents also believe that ███ was asking if ARMSTRONG was arrested as well, which would indicate that he was a passenger in the vehicle that ███ was operating during his pursuit.

205. On January 7, 2024, ███ called 414-865-7755 and speaks to the unidentified female. ███████████████ ███ ██████████████████████████ ███ ██████████████████████████ █ ██████████████████████████ ███████████████████████████ ███ ██████████████████

206. On January 10, 2024, ███ called 414-865-7755, the unidentified female yelled in the background, "it's your daddy. Call Fat Pooh" (TENNER). It appeared she did, but TENNER did not answer. ███ directed her to call "Cheeto" and gave the number 414-852-2533 (ARMSTRONG). The female places ARMSTRONG on speaker phone. ███ told him to "get it together right now" because he would be going to intake and it's "15 in the summary". ███ told him to piece it up with "Yon's people". ARMSTRONG said, "that's the plan". Case agents believe that "15 in the summary is referencing that $15,000.00 bail that was issued to ███ during his court appearance and "piece it up with Yon's people" is a direct statement to trying to get the bail money arranged with COLLINS. This call is consistent with

57

members of the DTO working together to protect each other, like posting bail from their drug proceeds to allow DTO members to be released from custody.

207. **On January 12, 2024, ███████ called 414-793-0708 and spook to an unidentified female who called TENNER on what appeared to be a second phone, based on the context of the conversation. It went straight to voicemail but was able to get in contact with him through Facetime. ███████ asked TENNER if it has been posted yet, which case agents believe is ███████ asking about his bail being posted. TENNER told him that ARMSTRONG was supposed to "handle it". ███████ told TENNER he was going to "need the house for a few days" because he wanted to "walk around naked", and talked about how he missed his bed. Case agents believe based on the conversation, it appeared that ███████ and TENNER reside together, which is consistent with information obtained during the investigation.**

208. On January 13, 2023, ███████ $15,000 cash bail was posted, and he was released from custody. Between January 13, 2024, and January 14, 2024, ███████ posted a message on his publicly viewable Instagram. The caption was "13K out of my pocket" and "Another 15K just ta walk". This is in reference to the nearly $13,000.00 ███████ was arrested with and the $15,000.00 bail posting to bail out of jail.

    **d.    Cellphones from ███████████████ Arrest**

209. On January 17, 2024, Honorable Judge William E. Duffin authorized a federal search warrant for all nine cellphones recovered during ███████ arrest. A review of those downloads was consistent with ███████ and other engaged in drug trafficking over a long period of time.

210.   Case agents later determined that three of the cellphone's, one Sonim and two iPhones could not be reviewed due to the fact they were locked.  Three iPhones were downloaded and reviewed, and three flip style cellphones were reviewed manually due to the inability to physically download them based on their make and model.

211.   Case agents were unable to review the physical download on the three iPhones for this affidavit but did complete a manual review of the iPhones for immediate documentation purposes.

### i.   iPhone 6s assigned number of ███████

212.   Case agents located numerous evidence that this phone was used for drug trafficking.  It should be that the information below is just snippets of brief conversations observed in the messaging thread on the phone and do not detail the full content of the cellphone's internal data.  There are numerous conversations regarding the sale of narcotics to various saved and unsaved contact phone numbers.  Based on the totality of what was observed, as well as case agents experience and training, this iPhone is consistent with the usage of coordinating the sale of narcotics to drug users.

213.   For example, on September 23, 2023, the iPhone was contacted by 262-698-9752 which stated, "can you meet me by 72nd and florist ave need a dub a b and dime of g", with the iPhone responding, "who is this".  Case agents are aware, the terms 'dub' and 'dime' are referencing the weights of narcotics while 'b' and 'g' are referencing "boy" or heroin and "girl" or cocaine.

214.   Between on September 1, 2023, and October 16, 2023, the iPhone was in communication with a saved contact of 'Big Folks', associated with 414-210-9406.  Messages with "Big Folks" was consistent with drug trafficking.  For example, on October 16, 2023, the iPhone messaged "I'm around it's good" and "Grams of boy for 60".  Case agents know from experience

that the reference of "grams" is the weight of narcotics with "boy" referencing heroin and "60" referencing the price of $60 dollars per gram weight of heroin.

215. On December 12, 2023, the iPhone messaged "$50 B $40 G I'm out moving around", referencing that one-gram weight of heroin was $50 dollars and one gram weight of cocaine was $40 dollars.

**ii. iPhone assigned number ███████ (███████**

216. Case agents reviewed iPhone with the assigned number ███████ which case agents know to be used by ██████ based on the investigation. The Apple ID for the phone was, ████████████ email ██████████████████, and the phone is an iPhone 8 Plus with serial number ████████████.

217. Case agents located numerous evidence that this phone was used for drug trafficking. It should be that the information below is just snippets of brief conversations observed in the messaging thread on the phone and other items observed, but do not detail the full content of the cellphone's internal data. Based on the totality of what was observed, as well as case agents experience and training, this iPhone is consistent with the usage of coordinating the sale of narcotics to drug users.

218. Case agents reviewed the photos section on the phone.

219. On June 5, 2022, there is a photo of a rent receipt for 4051 North 19th Street, Milwaukee, Wisconsin, in the name of Kennecia Terry for $1,400. Kennecia Terry rented the vehicle used by ██████ during the October 4, 2022, controlled buy.

220. Also on June 5, 2022, there was a screenshot taken of a white substance shaped in a square with the Apple logo embossed in the substance (Figure 4). Based on my training and experience, I believe this photo was consistent with a kilogram of cocaine.

60



(Figure 4)

221.     On April 5, 2023, there is a live photo of white substance believed to be cocaine, based on my training and experience, in a vacuum sealed bag sitting on a counter. The video panned to the right and a rocky white substance, which based on my training and experience I believed to be crack cocaine, in a clear plastic baggie.

222.     On November 9, 2023, case agents located a photo of a Wisconsin Title & License Plate Application in ██████ name for ██████████████████████████████. This is consistent with the ██████████ used during a controlled buy June 14, 2023, and TENNER on July 14, 2023.

223.     Case agents also observed numerous locations recently search on the phone including ██████████, Milwaukee, Wisconsin, which would be consistent with ██████ and ██████ residence of ████████████████████ **Milwaukee, Wisconsin (Target Location 4)**. Based on the investigation into the DTO, case agents determined this is the residence of ██████████████.

61

224. Case agents reviewed phone messages. On August 13, 2023, the phone provided a drop location of ██████████████ **Milwaukee, Wisconsin** which would be consistent with ██████████████ residence of ██████████████████ **Milwaukee, Wisconsin (Target Location 4)**.

225. Case agents reviewed messages with "Yon3" with the assigned number 414-588-2760, which case agents know to be the number for COLLINS. On September 15, 2023, Collins said, "Ft me and say u need some F so I can get out of here". Based on my training and experience, I believe "F" stand for fentanyl and ██████ and COLLINS are discussing the sale of fentanyl. On December 27, 2023, ██████ provided Collins the location of ████████████████, **Milwaukee, Wisconsin,** consistent with ██████████████ residence of ██████████ ██████████████, **Milwaukee, Wisconsin (Target Location 4)**, to which Collins responded, "OK…pulling up". On January 3, 2024, ██████ provided Collins with a link to United States District Court Eastern District of Wisconsin, Case Number 23CR58, RICKY T. MERRITT. Based on my training and experience, I know it is common for drug traffickers to share information regarding others engaged in illegal conduct which have been charged or arrested by law enforcement. This is done in an attempt to provide warning to other members to avoid these individuals or seeks other means to evade law enforcement.

226. The next messages are with the contact "Dukki", with the assigned number of 414-388-9117, which case agents know to belong to TENNER base on review of law enforcement databases. On May 1, 2023, TENNER sent ██████ two photographs, each of a white substance in a clear plastic, sitting on top of a yellow digital scale. Based on my training and experience, I believe this substance is consistent with cocaine. In the first photograph the scale read 63.65 grams.

In the second photograph the scale read 60.66 grams. Following the photographs, Tenner stated, "I gave tru 112". ███████ responded, "call me".

227.    On June 11, 2023, sent ██████ a live photograph of a white substance on a digital scale reading 56.01 grams.  Based on my training and experience, I believe the substance was consistent with crack cocaine.

228.    On August 7th, 2023, TENNER sent ██████ a screenshot of proof of payment to US Cellular pertaining to the phone number ████████ the same number that was provided to UC 1.

229.    On August 17, 2023, TENNER sent, "14.5 grams of dog 9 grams of woo". Based on my training and experience, I know that drug traffickers will refer to heroin as "dog" and cocaine as "woo".

230.    On August 30, 2023, TENNER sent ██████ a photograph of a digital scale with a substance believed to be crack cocaine, based on my training and experience.  The weight listed as 123.6 grams.

231.    Case agents reviewed messages with the contact "Dukki 2", with the assigned number of 414-309-4557, which case agents know is a secondary number belonging to belong TENNER based on review of law enforcement databases.

232.    On July 28, 2023, ██████ stated, "she on her way to get da truck…pull up..yo…pull up…bitch…she on her way". TENNER replied, "I got it". Approximately an hour and a half later TENNER sent ██████ a video and a photograph. The video depicted a brown powdery substance, loose on a kitchen plate. Based on my training and experience, I believe this substance was consistent with heroin.  Next to the plate was a white chunky substance sitting on an envelope, which based on my training and experience, was consistent with crack cocaine. As the video

63

continued, a glass Pyrex measuring container could be seen containing a clear liquid and metal knife. As the video panned additional suspected crack cocaine could be observed in at least 25 corner cut baggies, estimated to be one gram each. The video then goes over a clear plastic bag containing additional crack cocaine at which time a voice can be heard stating, "I'm gonna bust all that dat down though". The individual then stirs the liquid in the pyrex container at which time additional suspected crack cocaine can be seen at the bottom of the container. The photograph depicts suspected crack cocaine that is seen in the video on a digital scale that read 119.1 grams followed by the text, "it lost 7 grams".   Based on my training and experience, this video is consistent with drug trafficking manufacturing crack cocaine.

233.    On August 4, 2023, ███████ sent TENNER the address 5448 Nth 57th St.  On September 15, 2023, TENNER said to ███████ "I told terran to come on 46 he got white Volkswagen…he behind's you".  On October 12th, 2023, TENNER said to ███████ "Brian need more quarters he coming to the door". On October 31st, 2023, TENNER said to ███████ "I'm catching Mandy bag some grams of the woo up". On November 2nd, 2023, TENNER said to ███████ "Gram some more dudgie and woo". On November 9th, 2023, ███████ sent TENNER the address, "7875 W Oklahoma".  On November 15th, 2023, ███████ said to TENNER, "Pull up…let's go to blue truck". TENNER replied, "Omw…bag up some woo and woo pass outs…Outside".   On December 16th, 2023, Tenner asked ███████ "how much"? ███████ responded, "I think 55 a piece…I forgot..he gone keep it real doe". TENNER replied, "Ok…he gave me 550".  On December 29th, 2023, ███████ asked TENNER, "is it slow" and TENNER responded, "kind of I just got Keith and Jonny but Jonny on 77 National (fire emoji)". Based on my training and experience, case agents believe these messages are consistent with ███████ and

TENNER communicating about suspected drug transactions, including price, weights, locations, and type of drug.

234.    On May 1, 2023, ███ sent a photograph of a letter from WE Energies addressed to Kieviana L Terry, ███████████████ **Milwaukee, Wisconsin (Target Location 4)** showing a late payment.  On May 16th, 2023, ███ sent a screenshot which appeared to be taken from the WE Energies phone application. There are two listed addresses on the account, ███████████████████████████████ ███████, **Milwaukee, Wisconsin (Target Location 4)**. These screenshots were received from TENNER.

235.    The next messages are with the contact "Cheeto" with the assigned number 414-852-2533.  Case agents know this number to utilized by ARMSTRONG, based on review of low enforcement data bases.  Case agents observed numerous messages between ███ and ARMSTORNG between September 14, 2023, and January 4, 2023.  ARMSTRONG and ███ discussions included telephone numbers and locations, consistent with them drug trafficking.

236.    On November 17, 2023, ARMSTRONG stated, "wake up big brother…call me I got some action for you".  Based on my training, experience, and investigation into the DTO, this would be consistent with ARMSTRONG likely having a drug buyer.

237.    On November 18, 2023, ███ sent ARMSTRONG the address 1915 South 7th Street, Milwaukee, Wisconsin. ARMSTRONG subsequently told ███ "get ready 8 min" followed by a screen shot from the Uber application showing a purchased ride from ███████ Milwaukee, Wisconsin, which would be consistent with ███ and TENNER's residence of ███████████████ **Milwaukee, Wisconsin (Target Location 4)** to 1915 South 7th Street, Milwaukee, Wisconsin.

238. The next messages are with the assigned contact "wf" with the assigned number 414-865-7755. Based on the content of the messages, case agents believe that "wf" and ██████ have a child in common. On December 23, 2023, ██████ informed Wf that, "somebody broke n da crib" while he was at a show in Appleton. ██████ explained that "dey took one of my choppers to…ps5…one of my glasses…some money…dey look through all da cabinets…I had like 50 000 worth of (shhh emoji) …me yon g yayo big cat Pooh Murda went to do dat show last nite". ██████ stated that the intruders entered through "fat Pooh window". Case agents know that "Fat Pooh" is a nickname for TENNER and that ██████ and TENNER are currently residing together. Based on my training and experience, choppers" which case agents believe is a common slang term for firearm or gun. I believe that this is in reference to someone taking a firearm. Further, the "50,000 worth of" message was in reference to money and/or drug based on the "shhh emoji". Case agents believe that this would be consistent with Instagram videos and text messages where ██████ shows and discusses large quantities of drugs and money.

239. The next message is with "Juicster" with the assigned number 414-534-4092. On October 16th, 2023, ██████ stated, "4033 W Custer Ave…dis addy fa vid..bro fire ass scenes…watch". Juicster asked, "what time tho". ██████ replied, "8…me u…cheese…fat pooh…Yon…my lil brother…big nut…dave…lil allen…droop…and my lil cuz n nem…we mob n". Based on the investigation, ██████ appear to reference members of the DTO, "cheese" (ARMSTRONG), "fat pooh" (TENNER), "Yon" (COLLINS), XXXXXX, and "droop" (HAMPTON Jr.). Based on review of social media, the location 4033 West Custer Avenue, Milwaukee, Wisconsin appears to be where ██████ and others recorded a music video. Case agents followed TENNER to 4033 West Custer Avenue, Milwaukee, Wisconsin following a controlled buy on July 14, 2023.

66

240.    The next message is with the contact "Low Down Dirty Shame" with the assigned number 920-512-5764.    Case agents identified this contact as Deangelo JACKSON based on review of law enforcement databases.    Case agent observed messages between JACKSON and ████ from April 2023 to December 2023.    The messages were consistent with them engaged in drug trafficking.

241.    On April 27, 2023, ████ stated, "U gave me 2 phones…4". JACKSON replied, "on top of the passenger tire". This would be consistent with the DTO member sharing of the drug trafficking phones, as seen during the controlled buys.

242.    On May 17, 2023, the two were discussing money. ████ stated, "I need dat pape today…ASAP…no bs…don't forget". JACKSON replied, "I ain't got it all right now big bro". ████ said, "how…wat u mean..u suppose to have dat…wyo…u faking out here". JACKSON responded with a photograph of a BMO Harris Bank Debit card in his name XXXX XXXX XXXX XX88 with the caption, "I jus deposited almost of my cheese in my new account this I got like a g on me tho". ████ responded, "man u play every time…wat dat got to do wit 1575". JACKSON explained, "I gotta wait to Friday to take out I'm good on my end ima have that other 1250 next week to".   This conversation is consistent with ████ likely fronting drugs to JACKSON to sell. ████ later asked, "and where dat other phone"? JACKSON stated he gave all three of them already and ████ replied, "NAW Pooh said it's a phone miss n…u gave him five yesterday…u da only mf who had it…u and dre". JACKSON stated that there were six phones when gave them to Dre and then said, "bro you think I wouldn't hear a phone ringing quan since yesterday at 6 I know what I gave Dre because I had left my weed and my sack in the bag nd had to come back and get it". The two continued to argue about phones and money and JACKSON ultimately provided ████ with the phone number of the phone they were referring to, 414-659-2555.  Again, the

conversation regarding the phones, would be consistent with the DTO member sharing drug customer lines.

243.     On June 5, 2023, ██████ asked JACKSON, "wat u got on rental…me u and dukkie and tre". Based on my investigation into the DTO "dukkie" is believed to be TENNER. Case agents have not been able to identify who "Tre" may be.  JACKSON replied, "Me n u bro I ain't really comfortable wit them niggas like that Tre yeah sometimes when he ain't on his typical shit we know Tre good for that lol naw but me n u I would but then idk big bro jus being honest". Later that evening ██████ told JACKSON, "take em to Dre…rn". Based on my training and experience, I believe these messages are consistent with ██████ directing TENNER and "Tre" totake the drug phones to another DTO member; however, JACKSON is concern about trusting this other person.

244.     On June 12, 2023, sent ██████ photograph of a white substance on a digital scale, which based on my training and experience would be consistent with crack cocaine. The digital scale read 42.7 grams. Along with the photograph sent, "And I did 20g whole gram 10g in half's the rest is .25 .3".

245.     On June 24, 2023, JACKSON said to ██████ "Brianna house or you want me to take them to Dre"? ██████ replied, "Dre…make sure all da jacks n there". JACKSON subsequently told ██████ "that other tissues was 22.8 with the bag to". On June 27th, 2023, JACKSON told ██████ "got supervisor coming out for my address update she until 12". Based on my training and experience, I believe 22.8 is referring to drug weight.  Further, I know that JACKSON was on supervision, and his message to ██████ regarding "got supervisor coming out" would be consistent with JACKSON warning ██████ about Wisconsin DOC presence at his residence.

68

246.     On August 1, 2023, ███████ asked JACKSON, "way…any doggy left"? JACKSON responded, "pulling up to his letting dog in n yea 2g but you gon need more". Based on my training and experience, the message is consistent with ████████ is asking JACKSON if there is any heroin left.  As previously described "dog" and "doggy" is a slang term for heroin.

247.     On August 31, 2023, JACKSON asked ████████ "what happened last night"? ████████ said that he pulled up too late and JACKSON responded, "Damn I had heads last night bu I gotta po visit later I need you grab my shit".  As previously noted, case agent are aware JACKSON is on supervision.  Based on my training and experience, "head" is a term used to describe a drug user and this message is consistent with JACKSON warning ████████ about DOC coming to his residence and the need to remove any controlled substance at the residence.

248.     On September 7, 2023, after no messages since September 2nd, 2023, JACKSON stated, "what it do big bro I'm checking out this center today at 12 and we gotta talk for sure I'm clean from everything feels good buy my mission is still the same get you that right away I'm grabbing my stuff and taking it back to my mom house bro and get it back all the way together I fucked up and I can admit that but I got a couple grits and mf gotta couple hunnit for me but I'm jus glad you understood when I told you about what I was going through and you never judged me not once thanks for that big bro so you priority number one when I get outtta here I jus got my phone back yesterday so I'm letting everyone know what's going on with me Love you big bro". ████████ replied, "if I find out u swipe n me I'm kill n u…Ion even play like dat…I'm tired of niggas play n". Based on my training and experience, I believe these messages relate to threats of violence by ████████ to JACKSON, where ████████ is threatening JACKSON over what he perceives to be the allegation that JACKSON is possibly stealing from ████████

69

249. On December 6, 2023, ███████ was again asking JACKSON for his money, stating "dats 4 gs damn near". Later in the conversation ████████ stated, "I been buy n all dese drakes and shit…dis ain't da time on diamond bro". Based on my training and experience, "drakes" is a term used to refer to firearms.

### iii. Sonim Flip phone assigned number ████████████

250. Case agents reviewed the items on the black Sonim flip phone, phone number ████████ . The last activity on the phone appeared to be January 5, 2024, the night that ████████ was arrested.

251. The below are snippets of brief conversations observed in the messaging thread of this iPhone and do not detail the full content of the cellphone's internal data. There are numerous similar conversations regarding the sale of narcotics to various saved and unsaved contact phone numbers. Also, in reviewing text messages that were received, it should be noted that dates and times are unavailable due to the fact the SIM card could not be placed back into the phone at the time of this review.

252. There is an unknown contact with the phone number (414) 982-7362 that sends a message, "Hey cheese I'm gone because it doesn't take that long for you to pull up on me so I'll catch you on the next round." This message is significant due to the fact that case agents know that ARMSTRONG goes by the nickname "Cheese".

253. The next messages are between an unknown contact with the assigned phone number of 414-394-1844. The first message is from that contact to the phone with a question mark, and the phone responds, "$ Davontaea1", which case agents believe is the Cash App associated to ARMSTRONG. The unassigned contact sends, "aight I sent the 30 and got 7 in cash wya." That

is the end of the contacts between the two lines.  Based on other messages on the phone, and the investigation into the DTO, it is believed this discussion was about payment for a drug transaction.

254.    The next message is with a phone number identified as 414-687-9091, which has no assigned contact to it.  There is a message from that number to the phone, "If you ever sell drugs to mando again I WILL PERSONALLY FIND YOU AND FUCK YOU UP LOOSE HIS NUMBER AND THIS ONE."  The phone responds, "Wrong number" and that is the last message between the two.

255.    The next thread is with an unassigned contact with the phone number 414-791-4321.  The first message is from 414-791-4321to the phone, 'Hey is cheese around I'm texting for 345 blk."  Based on the investigation, case agent identified "cheese" as ARMSTRONG.  The phone responded "wya" and the contact sends, "He said do you got money on your phone and he need a lite 50 for canteen if you can," then, "I'm on 63rd and Carmen, 6323 W. Carmen Ave.  Hey black said he can only text right now and if you can't come with that tonight cheese he said that we can hook up tomorrow and can give you it to me and he said its all love he appreciates you."  The phone responded, "You got Cash App" and the number sends, "Yes I do."  The phone sent, "Send it" and the user of that account sends the Cash App with the associated name of "Smith".  The phone number sent, "You get it" and the user of the phone sends, "This is a flip phone."  The number then sent, "No iphone 14", and the phone sent, "Send it regular."   The phone number sends, "#addme414".  Based on my training and experience, this communication is consistent with drug amounts and payment for drugs.

256.    The next review was regarding the call logs and contacts.  While reviewing the call logs, there was a number identified as 414-388-9117, which called the phone on January 2, 2023, at 2:14 a.m.  The call log indicates this was a missed call, but it should be noted that this is a number

71

identified as belonging to TENNER. While reviewing frequency reports for COLLINS telephone number 414-588-2760, case agent observed between December 28, 2023, and January 22, 2024, there were two contacts between the phone number 414-388-9117and COLLINS telephone number 414-588-2760. While reviewing the call logs of this telephone number further, there was an outgoing call from the phone to the 414-388-9117 number at 1:09 a.m. on January 2, 2024. There was an additional outgoing call on December 26, 2023, at 1:04 a.m. from the phone to 414-388-9117.

### iv.  LG flip phone assigned number ████████

257.    Case agents reviewed information on the silver LG flip phone with an identified phone number of ████████. While reviewing the phone, there was nothing significant in the contacts section, and there were two photos in the phone, one being of a black screen and the second being an unidentified white male that appeared to have a severe injury to one of his thighs, although it is unknown how that is related. While reviewing the text messages in the phone, there are several messages, but again, the ones with evidentiary information which are noted in this report are not the only messages inside of the phone.

258.    There is a contact identified as "Brenda", with the phone number assigned to the contact of 414-578-6859. There are several messages between Brenda and the phone, with the first message being identified on April 16, 2023. One of the first messages is sent from Brenda to the phone, stating, "What's up Pooh." There was a response from the phone less than one hour later, "Hey antie."  On April 19, 2023, there is a message from the phone to Brenda, "I'm around its good."  There are several messages throughout the time period of the messaging where Brenda identifies or asks if the person using the phone is "Pooh". Based on the investigation into the DTO, case agents believed "Fat Pooh" and "Pooh" is a nickname for TENNER, based on review of social

media.  Case agents believe that the cellphone reviewed is mainly handled by TENNER based on the amount of messages from this number to the phone with the messages directed to "pooh".

259.    The next significant messages are with an account identified as "Keith Walnut", with the assigned number of 414-215-8814.  The first message between Keith Walnut and the phone is on December 28, 2023, and is from the phone to Keith Walnut, stating, "I'm good its around," and another message on December 29, 2023, from the phone to Keith Walnut, "fatpooh345".  There is a message on December 30, 2023, from Keith Walnut to the phone, "poo-40-asap", and in a message on January 03, 2024, "poo-100".   Based on my training, experience, and investigation into the ADTO, these messages were consistent with drug users request from TENNER different drug amount.  Further, Based on ███████ possessing this phone at the time of his arrest, this would be consistent with DTO members sharing drug customer cellphones to engaged in drug trafficking.

260.    There is a message thread with the account "Trippy Red", with the first message from the phone to Trippy Red being, "I'm good its around" on November 28, 2023, and a message on December 4, 2023, from Trippy Red to the phone, "You got budz?"  The phone responds on December 5, 2023, "got g and b."  Based on my training and experience, I know "g" and "b" to be a common slang term for cocaine and heroin.  There are messages from Trippy Red to the phone on December 15, 2023, "U got Tina?" Based on my training and experience, I know "Tina" to be street slang for methamphetamine.

261.    There are additional message threads where the user of the phone is just sending, "I'm good I'm around its good" and comments from multiple users about locations and asking about prices, which would all be indicative of a phone being utilized for drug activity.  There is no further information that was reviewed indicating any other user except for "Fat Pooh", TENNER.

73

### v. ANS phone assigned number ████████

262.     Case agents examined the information from the black ANS cellphone, with the assigned phone number of ████████. Case agents observed a contact of "po" with telephone number 414- 534-4165.  Case agents did contact this number and learned that it is a phone number for a Probation & Parole agent through the Wisconsin DOC.

263.     While going through the remainder of the phone, there are similar messages that seem to be more of a personal conversation and very limited information regarding drug activity, but there are suspicious messages sent to the phone, although nothing from the phone that would indicate it is strictly used for drug purposes.  It appears, as noted earlier, to be more of a personal phone.  The investigation is ongoing as to whose phone that is.

### vi. ANS phone assigned number ████████

264.     Case agent reviewed an iPhone 7 with the assigned phone number of ████████. Case agents located only one, indiscernible photo in the phone's photo album. Case agents located 59 contacts, with none appearing to have a significant relationship to this investigation.  There is also a very limited Internet history.

265.     Case agents reviewed messages on the phones.  Several messages that appeared to be drug related.  On December 12, 2023, the user of the phone sent what appeared to be all the contacts in the phone, a message stating, "$50 b $40 g I'm out moving around."  Based on my training and experience, these messages are consistent with the sale of drugs, "b" is known slang term for "boy" and heroin and "g" is known slang term for "girl" and cocaine.  Further, it appeared the user was advertising the cost for the drugs, $50 for heroin and $40 for cocaine.

266.     The next message of note is with a phone number identified as 414-737-8797.  The first message, on October 18, 2023, is the address "3834 E. Hammond", and the next message,

being on January 1, 2024, at 12:50 a.m., which stated, "Bro I'm in Cudajy got 30 to 10 hard and 20 aoft." There is then another message, "girl". Based on my training and experience, I know that "hard" and "soft" are terms related to cocaine and "girl" relates to cocaine.

267. Case agents reviewed messages with the account identified as "Memphis", with the assigned phone number 414-415-1833. The messages begin on October 31, 2023, with Memphis sending a message, "Is Memphis got 20 Cash App." There are several messages with Memphis consistent with drug trafficking. On December 12, 2023, "$50 b $40 g I'm out moving around." Based on my training and experience, "b" is known slang term for "boy" and heroin and "g" is known slang term for "girl" and cocaine. Further, it appeared the user was advertising the cost for the drugs, $50 for heroin and $40 for cocaine. Shortly after that message on December 12, 2023, Memphis responds, "I ain't been hitting you because I'm not mobile at all. I've been getting is 10 n wat not n I know u not gonna move for that." The phone responds, "ok to make it make sense to me and u grab u a gram every time u call me and I'll give to u for 40." Case agents know this to be discussion of prices for grams of suspected heroin.

268. There is nothing to indicate who the specific user of this iPhone is, but it is clear that the messages would indicate that this phone is used for drug activity.

### E. Review Of Instagram Records for DTO

269. On December 20, 2023, Honorable Judge Stephen C. Dries authorized search warrants for the Instagram accounts belonging to COLLINS, "yonbacklilbih" and "qianbacklilbih" and ████████ ███████████, regarding the records from between July 1, 2022, and approximately December 20, 2023.

75

270.    Case agents received those records from Meta Platforms, the parent company of Instagram.  Case agents completed a review of all three accounts.  All three accounts demonstrated ongoing drug activity by COLLINS, ████ and other DTO members.

a.    **COLLINS, "yonbacklilbih" Account**

271.    In reviewing "yonbacklilbih", case agents found several entries that were noteworthy for the investigation.  Case agents located messages between COLLINS and an account identified as "hnic_cheese8", which case agents know belongs to ARMSTRONG, based on review of the content.

272.    The communication began on August 14, 2022.  In a message sent on September 24, 2022, there is documentation stating, "Tae shared a story", which would be consistent that this is again an account associated to ARMSTRONG.

273.    On November 21, 2022, ARMSTRONG sent the message to COLLINS, "Do me a favor Yon, I need Kayla back around" and COLLINS responds, "Say less." Case agents believe that this is in reference to illegal narcotics possibly being cocaine, based on the statement by COLLINS.  Case agents are aware that COLLINS has referred to methamphetamine as "Tina" previously.  Further, based on training, experience, and the investigation into the COLLINS DTO, case agents believe the name "Kayla" is related to drug activity based on the manner the term was used along with the response from COLLINS "Say less."  In my training and experience, "say less" is commonly used by those engaged in criminal conduct to mean they understand and to not discuss this illegal conduct further.

274.    On November 29, 2022, ARMSTRONG sent COLLINS, "Bring me the lean." COLLINS responds, "Bitch I drunk it."  Based on my training and experience "lean" is a syrup-

76

type drink that has codeine and promethazine typically mixed with a soft drink or an alcoholic beverage which allows the user to obtain a high from drinking.

275. On November 17, 2023, ARMSTRONG sent, "95 dope runners???" and COLLINS responded, "U got to keep some". Based on my training, experience, and investigation into the DTO, I believe these messages relate to drug trafficking. Case agents believe these terms, like "95 dope runners" are associated with COLLINS and ARMSTRONG communicating about individuals selling drugs for the DTO and certain weights and types of drugs, like heroin or fentanyl.

276. The next thread is with the Instagram handle "thareal_moneymunk3278". Based on review of law enforcement databases and discussions with the Milwaukee Police Department Special Investigations Divisions, I was informed that "3278" is related to a Milwaukee based gang. The gang "3278" broke into two separate gangs being "FNF" and "Superthrowed". This information is consistent with several DTO members being associated to targets known as "Superthrowed Rio" and "Superthrowed Dave". With the gangs being based in the Buffum Street area of Milwaukee. This handle would indicate being associated to COLLINS, based on the 3278 which is a known gang or group of individuals and several members of the COLLINS DTO that go by the moniker "3278".

277. There is a message on August 15, 2023, which is from the individual associated with account "thareal_moneymunk3278" to COLLINS, "I love you too cuz nbs always been wit me nigga. You my motivation real shit cuz on tete. I'm always be here if you need Ion kno the word no when it come to you always remember use muscle and soldiers while you still got time". COLLINS responded "I'm already knowing fuck niggas when that time come. I'm fuckin niggas over". That is the last day of contact between the two.

77

278.    The next message thread is between COLLINS and the Instagram handle of ████████████, which is the known Instagram handle for ████████████ The first message is on December 16, 2022. There are a significant amount of messages between the two, which would again show the association between the two targets.  Most of the communication between the two parties are attachments or shared stories, or basic conversation which does not contain much evidentiary information.

279.    Case agents also observed messages on "yonbacklilbih" to "big_droop2", which is believed to be the Instagram handle associated to HAMPTON Jr. based on review of the messages. Messages began on September 15, 2022.

280.    On October 8, 2022, there is a message from HAMPTON Jr. to COLLINS, "120 14 60 7 to".   COLLINS responded, "Say less wya". Shortly thereafter, COLLINS sends another message stating, "Call me".  Based on my training and experience, I believe these messages refer to drug trafficking.  It is believed HAMPTON Jr. was communicating in code regarding weights of illegal narcotics that he needed from COLLINS.  Further, based on my training and experience, COLLINS response "Say less", likely meant he understood and warned to not discuss the illegal conduct further.

281.    On August 12, 2023, COLLINS sends HAMPTON Jr. a message, "The right way or the wrong way we gone, get rich".  Based on my training, experience, and investigation into the DTO, I believe "the wrong way" refer to their drug trafficking activity.  The last message between the two is on December 3, 2023.

282.    Case agents also reviewed messages between COLLINS and Instagram handle identified as "414cam". The first message is on April 4, 2022.  On October 27, 2022, this individual sent COLLINS a message, "I know you locked n wit a plug but just n case they at $825".  Based

78

on my training, experience, and investigation into the DTO, the term "plug" usually refers to a controlled substance source and therefore, it appears this person is providing a possible other drug source for COLLINS. The last message between the two is on December 1, 2023.

283. Case agents also reviewed messages between COLLINS and Instagram handle ███████████ Case agents know this account to be associated to another target of this investigation identified as ██████████ ████████████████████████████████ ████████ █████████████████████████████████████████ ███████████████████ ██████ ████████████████████████████ ████████████████

284. Case agents also reviewed messages between COLLINS and Instagram handle "bigsleeppp". On September 1, 2023 "bigsleeppp" messaged COLLINS, "1850". There are then attachments between the two, and later on September 1, 2023, "bigsleeppp" sent COLLINS another message "125 zip". COLLINS then appears to have sent a voice message to that person and that ends the contact between the two parties. Based on my training and experience, "1850" would be consistent with a drug price, as well as "125 zip" would refer to $125 for an ounce of a controlled substances.

285. Case agents also reviewed messages between COLLINS and Instagram handle "alon.drapujols". On March 14, 2022, "alon.drapujols" sent COLLINS a message, "Yo", "Hey" and "Friend". The messages continued, "Name is Alondra" and "Where are you from" and "I am Dominican Republic" and "Yoo". The "alon.drapujols" account eventually sent a photo to COLLINS, which appeared to be multiple kilograms of suspected narcotics (Figure 5) on August 29, 2023. There is an additional photo along with that, which shows what appears to be a kilogram

79

of suspected cocaine, with the numbers 100% engraved into the kilogram (Figure 6). Case agents did not locate a response from COLLINS on the account.





(Figure 5)                                                   (Figure 6)

286. Case agents also reviewed messages between COLLINS and Instagram handle "big_babysmoke". There is a message from this account to COLLINS on July 11, 2023, "Whats yo line cuz", and COLLINS responded on July 12, 2023, with "414-588-2760". It should be noted that there are several messages in the records were people asked COLLINS for his number and "(414)588-2760" is the response that COLLINS sent back. Case agents identified telephone number 414-588-2760 as COLLINS's current number.

287. Case agents also reviewed messages between COLLINS and Instagram handle "zaktavis". The messages began on July 5, 2022, and stated, "Yo call me I got somthin important to tell u". COLLINS replied, "OK what it do". That account sent, "I'll call u in a bit u got the phones". A short time later, there is another message from that account to COLLINS, "U need to block chads # on both the 588 and the 419. I'll tell u more over the phone but do not serve him anymore". COLLINS responded, "Ok" and then sent, "Call". The "zaktavis" replied "I did. Basically he got flipped in Waukesha where they are known to try n flip you for OWI cuz he was

all xanned out n had that shit on him n even told me they were taking him in and is already out back at work this morning at 5am" and "U already know how that sound". COLLINS responded, "Yep good lookin bro". "zaktavis" then sent, "Yerr". Then on July 3, 2023, "zaktavis" sent COLLINS, "You're ppl ignoring me again." Based on my training, experience, and investigation into the DTO, these messages are consistent of individuals attempting to warn COLLINS of a possible law enforcement cooperator. This would be consistent with COLLINS being engaged in illegal activity. Further the messages "You're ppl ignoring me again." Would be consistent with individuals working for COLLINS in drug trafficking not responding to "zaktavis".

288. Case agents also located a message between ""therealtoolie1" and COLLINS. COLLINS sent a photo of a prescription cough syrup or medicine (Figure 7). The photo is a closeup of the label, and it appears the last name is GREEN. The label indicates it is promethazine-codeine, and it appears that there is a prescription label from an unknown pharmacy, due to the blurriness of the photo. COLLINS stated on December 19, 2022, "Nope I still got it for you". "therealtoolie1" responded, "Awww shit I love youuu lol I get off at 10 Ima meet u". COLLINS responded, "Love u to bet just hit me". Based on my training and experience, promethazine is used to create "lean." That is the last message between the two on December 20, 2022.



(Figure 7)

81

289.    Case agents also reviewed messages between COLLINS and Instagram handle "Jefe_Lukas13".  The first message is on July 1, 2022, "Jefe_Lukas13 stated, "What's up bro I'm from Mexico.  COLLINS responded, "What it do".  "Jefe_Lukas13 sent, "Interested talk about serious business o no".  COLLINS responded, "Yep".  On July 6, 2022, "Jefe_Lukas13" sent "I have everything".   "Jefe_Lukas13" then sent a series of messages with the words "Yayo", which based on my training, experience, and investigation into the DTO, I believed to refer to cocaine. "Jefe_Lukas13" then sent "Ice:, "Pills".  Based on my training and experience, I know "Ice" is a common term used by drug traffickers to refer to methamphetamine and "Pills" is used to refer to other controlled substances, like fentanyl pills or fraudulent oxycodone pills.  I also am aware that many controlled substances that enter into the United States come from Mexico.   On July 8, 2022, "Jefe_Lukas13" sent "Yo" and "What's up g, "Yo, you games", and COLLINS responded on July 11, 2022, "Man who is u".  "Jefe_Lukas13" sent, "I'm live in Mexico bro". That is the last message between the two.

290.    The next video that was reviewed is another archive story, which shows a brown paper bag and is a closeup video of what appears to be a very large amount of U.S. currency inside of the bag, and the individual is zooming in and out (Figure 8 is a screen shot).  Based on my training and experience, this large amount of case store in such a way is consistent with drug trafficking proceeds.

82



(Figure 8)

291.    The next video viewed by case agents was three seconds in length and shows a

black bag, with what appears to be heat-sealed bags, which contain large stacks of U.S. currency

(Figure 9 is a screen shot).  Similar to Figure 8, based on my training and experience, Figure 9 is

consistent with drug proceeds.



(Figure 9)

292.    The next video (Figure 10 is a screen shot) on COLLINS's Instagram account,

viewed by case agents, referenced "beauty_muscles_dog_kennels", which is the known account for

WINSTON. The caption is "To my brothers I love you niggas, heart emoji, 100 we watched each

other grow in so many different ways. We the GOATS fr. I'll turn to the devil behind you niggas"

There is another caption stating, "Love u too lil bro. I got y'all 5 life u know I'll knock a house

down for you". There are several accounts tagged, including the accounts believed to belong to

BRUCE, HAMPTON Jr., and COLLINS, along with another account with an unknown user

identified as "lbm_shang". It should be noted this video is 15 seconds in length. Based on my

training, experience, and investigation into the DTO, I believe these messages refer to the DTO

member's loyalty to each other. For example, "I got y'all 5 life u know I'll knock a house down

for you" is believed to refer to WINSTON's willingness to serve 5 years to life in prison for DTO

members.



(Figure 10)

293.    Another video (Figure 11 is a screen shot) viewed by case agents was ten seconds

in length and showed an unidentified black female on top of a bed, along with a male, believed to

COLLINS based on his voice, sitting next to her. Also, on the bed and in the female's hand is a

large amount of U.S. currency. In addition, there is a large plastic bag, which is empty on the floor

between COLLINS and the unidentified female. Based on my training and experience, this large

amount of cash is consistent with drug proceeds.

84



(Figure 11)

294.     The next video reviewed by case agents on COLLINS's account is 13 seconds in length and shows several stacks of U.S. currency, mainly $100 bills on top of a table (Figure 12 is a screen shot). Similar to the other videos of large amounts of cash, this would be consistent with drug trafficking proceeds.



(Figure 12)

295.     Case agents reviewed a video from the account of "Brianna_love1000", which is the known account for Brianna Madden, the known girlfriend of COLLINS. The video has both

Instagram accounts for COLLINS tagged on it, along with an ice cube and two freezing emojis. Based on my training and experience an ice cube and freeze emojis are used in drug trafficking to refer to methamphetamine. The video shows a type of purse or wallet, which is open and has several stacks of U.S. currency inside of it (Figure 13 is a screen shot). Based on the content and my training and experience, I believe the videos is consistent with drug proceeds.



(Figure 13)

296.    Case agents also located a 29 second video on COLLINS account that shows what appears to be a black bag and a hand go inside the bag. The video shows several large bindles of U.S. currency inside of the bag (Figure 14 is a screen shot). Based on my training and experience, this video of cash is consistent with drug proceeds.



(Figure 14)

86

### b. COLLINS "qianbacklilbih" Account

297.   Case agents reviewed records from COLLINS other Instagram account, "Qianbacklilbih", and found several entries that were noteworthy for the investigation.

298.   Case agents observed "Qianbacklilbih" had telephone number (414) 614-5396, associated to the account.  telephone number (414) 614-5396 is the same phone number associated to the "yonbacklilbih" account too.  Also, telephone number (414) 614-5396 has been identified by case agents as a previous number used by COLLINS.

299.   Case agents observed on a conversation thread from October 23, 2023, that showed a prescription bottle for Promethazine Codeine Serum, which shows a torn-off label that indicates the prescription was filled at Life Change Pharmacy, located at 7115 West Capitol Drive, Milwaukee, Wisconsin (Figure 15).  Based on my training and experience, this prescription is used to manufacture "lean".  The bottle was placed on what appears to be a wooden table next to a large gold and diamond-encrusted necklace and pendant, with "3278" on a bear paw, which is a necklace and pendant known to be worn by COLLINS.  As previously noted, "3278" is known to be associated with a Milwaukee based gang.



(Figure 15)

300.    Case agents also reviewed messages between COLLINS and Instagram handle "Brianna_love1000", which is a known Instagram account for MADDEN.  The first message between the two parties is on July 1, 2022, and there are no significant items of evidentiary value, but it does show there is contact between COLLINS and MADDEN via Instagram.

301.    Case agents also reviewed messages between COLLINS and Instagram handle "ymbp_funnymoney", whom case agents have identified as Quentene Williams Jr, based on the content of the messages.   On December 20, 2023, COLLINS stated, "I'm fin to get this bar."  This is around the same time that case agents learned that COLLINS had purchased a bar in the area of 47th and National.

302.    Case agents also reviewed messages between COLLINS and Instagram handle "taeouttheway".   On October 21, 2023, COLLINS messaged, "Bitch why u ain't call me back?" "taeouttheway" responded, "I was only able to get a duce bro was bs."  COLLINS stated, "Say less love."  On October 22, 2023, "taeouttheway" sent COLLINS, "Let me buy some" and "How much?"  COLLINS states, "I'm gonna send u the list my nigga."  Based on my training and experience, these statements are consistent with discussions of drug trafficking.  Specifically, the comment "I was only able to get a duce" is reference to a weight or amount of a drug given the response "Let me buy some" and "How much" which is consistent with drug transactions.  Further, "I'm gonna send u the list my nigga." would be consistent with COLLINS indicating he would connect the buyer with his DTO members.

303.    Case agents also reviewed messages between COLLINS and Instagram handle "_taaee_", which is the known account for BRUCE based on the consent and profile pos.

304.

305.     On August 12, 2022, BRUCE messaged COLLINS, "Supreme got too much heat I can't find."  COLLINS responded, "mbs I'm fin to try to find some when I'm down here."  Based on my training and experience, I believe these messages refer to BRUCE being unable to locate a certain type of drug and COLLINS is indicating that he is trying to locate the drug.

306.     Case agents also reviewed messages between COLLINS and Instagram handle "unclebigpocketsbeenhaving".  On September 27, 2023, "unclebigpocketsbeenhaving" messaged COLLINS, "They done pissed my boy off this afternoon."  On October 28, 2023, "unclebigpocketsbeenhaving" messaged COLLINS, "Dude got all on a g."  COLLINS responded, "I'm bringing him Thanksgiving."  "unclebigpocketsbeenhaving" responded on October 29, 2023, "well let's go" and "I'm in there."  COLLINS responded on November 01, 2023, "Say less my nigga."  Later, on November 1, 2023, "unclebigpocketsbeenhaving" messaged COLLINS, "I got a five of tris fa sale big bro fresh out pharm."  COLLINS sent "unclebigpocketsbeenhaving" his phone number, identified as (414) 588-2760.  "unclebigpocketsbeenhaving" responded, "It's going to vm."  Based on my training and experience, these conversations were consistent with drug trafficking.  For example, I am aware that "tris" is a common term used by drug traffickers for "lean", which, is a mixture of Promethazine and Codeine syrup.

307.     Case agents also reviewed messages between COLLINS and Instagram handle "hnic_gcheese8", which is an account case agents know to be associated with ARMSTRONG, based on review of the content, profile picture and ARMSTRONG's nickname "Cheese" used in the conversations.   On August 23, 2022, COLLINS sent ARMSTRONG, "Rat at nigga must die." On September 05, 2022, ARMSTRONG messaged, "u think u got drip huh", and COLLINS responded, "U know I know a lil sum sum."  ARMSTRONG messaged, "We call it magic."  On September 7, 2022, COLLINS messaged ARMSTRONG, "u got some big I got u and vam I was

89

doing too much shit today folks."  Based on my training and experience, I believe these messages relate to COLLINS belief that someone is providing information to law enforcement "Rat" and "must die".  These messages are consistent with drug trafficking sharing information about possible police informants and notifying other DTO members and to encourage others to intimidate or threaten possible informants.  Further, based on my training and experience, I believe "big" is slang for cocaine.

308.    On January 6, 2023, COLLINS messaged ARMSTRONG, "that nigga police."  The account responded, "Wow what."  COLLINS responded, "Look it up on YouTube."  There is a significant portion of the messages that go on where COLLINS and ARMSTRONG are debating whether or not someone is providing information to law enforcement regarding a homicide.

309.    ARMSTRONG later messaged COLLINS, "Sell me some juice."  COLLINS responded, "I need some folks."  Based on my training and experience, "juice" is slang Promethazine or the mixture of Promethazine and another liquid forming a common mixture of "Lean".

310.    On March 28, 2023, ARMSTRONG messaged COLLINS, "Who died?"  There is no response from COLLINS, but case agents did note that late on the evening of March 27, 2023, Daniel RODRIGUEZ-PEREZ, was shot and killed by Dontrell FRANKLIN.  Further, case agents know that COLLINS had a drug trafficking relationship with RODRIGUEZ-PEREZ and FRANKLIN.

311.    Case agents also reviewed messages between COLLINS and Instagram handle ████████████, which case agents know to be the account for ████████████ who is another member of the DTO.  On August 05, 2023, ██████ messaged COLLINS, ████████████ ████████████████████████████  On August 15, 2023, COLLINS sent, ████

████████████ The account responds, ████████████ Based on my training and experience, I believe that this is in reference to █████ telling COLLINS he has drugs for someone. Later COLLINS told █████ ████████████ and ████████ indicating that the drugs they are discussing were good.

312.    Case agents also reviewed messages between COLLINS and Instagram handle "aaliyahthestylist".  On November 20, 2023, "aaliyahthestylist" messaged, "Lou locked up he said write yu to get the number asap."  COLLINS responded, "414-588-2760 what happened." "aaliyahthestylist" responded, "Him and Black got knocked together high speed wrapped the rental they both on there," and immediately sends another message, "he gone call you today."  Based on review of MPD reports and jail calls, case agents believe this message was related to L. Wilder and Gates arrest.  Case agents also believe based on the information that there is a possibility that Gates, and L. Wilder were working COLLINS.

313.    Case agents also reviewed messages between COLLINS and Instagram handle ████████████ which is an account case agents know to be associated to ████████ based on the investigation and photos on the account.  The first message between the █████ and COLLINS is on July 05, 2022. ██████ ██████████████████████████████████████████

████████████████████████████████████████████████ ████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████

314.    ██████████████████ ████████ ████████████████████████████
███████████████████████████████████████████████████████

91

315.    On ████████████ ██████ ████████████████████████

316.    Case agents also reviewed messages between COLLINS and Instagram handle "dstowing414". On July 24, 2023, "dstowing414" messaged COLLINS, "Let buy some of that red." COLLINS responded, "That's some purple I got today. I'll sale u one." The account responds, "Bet". Based on my training and experience, I believe "red" and "purple" refer to "lean". COLLINS indicates he has "purple" to sell.

317.    Case agents also reviewed messages between COLLINS and Instagram handle "12121111_kasmoney91". On March 04, 2023, "12121111_kasmoney91" messaged COLLINS, "If you want let me know." On March 05, 2023, COLLINS responded, "How much wya." The account responded, "If you buy a quantity, I'll give it to you in 500." "12121111_kasmoney91" then sent, "Every pound" and "Give me your number to call you." COLLINS responded, "414-614-5396". Based on my training and experience, these messages were consistent with drug trafficking, the discussion of weights and cost of the controlled substance, likely methamphetamine given the reference to "pound" and prior controlled buys with the DTO.

318.    Case agents also located photos and videos consistent with COLLINS engaged in drug trafficking.

319.     Case agents located a photo of a baby bottle with what appears to be a thick, yellow, syrup-like liquid inside of it, with an upside-down medical bottle on top of the baby bottle.   The bottle appears to be a prescription cough medication for an extended-release suspension with a 12-hour dosing and has the label "Tris" on it (Figure 16).   Based on my training and experience, this would be consistent with "lean".     There is a caption from an account identified as "savage2smoov_".   The message is sent on December 12, 2023, with the caption, "Gotta tre of yellow cuz."   There is no response from COLLINS.



(Figure 16)

320.     Case agents reviewed a video that was reviewed is 15 seconds in length and showed COLLINS holding a large amount of U.S. currency in both of his arms (Figure 17 is a screen shoot), and an additional photo with a female believed to be Brianna MADDEN (Figure 18). Based on my investigation, training and experience, the cash COLLINS has is consistent with drug proceeds.



(Figure 17)          (Figure 18)

321.    Case agents reviewed a 57 second video, which shows COLLINS recording himself inside of a vehicle, saying that his car had been in the shop for "6 months" and that he went into the center console and located a large amount of U.S. currency.  He stated, "This is what I find in that bitch", and starts thumbing through the currency, showing the denominations, which were mostly twenty-dollar bills, fifty-dollar bills and one-hundred-dollar bills.  COLLINS stated, "I have this much money in this car for 6 months."  (Figure 19 is a screen shot).  Based on my training and experience, the cash and the denominations are consistent with drug proceeds.



(Figure 19)

322.    Case agents reviewed a 15 second video which shows COLLINS initially talking about self-care, and pans to a kitchen counter in back of him and shows seven prescription bottles filled with an unknown type of liquid.  The video starts zooming in and out of the prescription bottles and COLLINS is heard stating, "Some of this red red or purp purp."  (Figure 20 is screen

94

shot). Based on my training and experience, this video is consistent with COLLINS engaged in the manufacturing of "lean." Below is a screenshot of that recording.



(Figure 20)

323. Case agents reviewed a 17 second video which showed several bundles of U.S. currency on the floor, with COLLINS making comments in the background, saying, "Breezy be a stripper," and COLLINS thumbing through the bundles of U.S. currency (Figure 21 is a screen shot). Based on my training, experience, and investigation into the DTO, this case is consistent with drug proceeds, though COLLINS comments relate to stripping.

95



(Figure 21)

324.    Another video reviewed by case agents is six seconds and shows COLLINS inside of a vehicle holding two prescription bottles of an unknown liquid medication, with the camera zooming in and out and the caption, "Yo c rrr."  (Figure 22 is a screen shot).  Similar to the other videos and photos of prescription, based on my training and experience, this video relates to COLLINS drug trafficking.



(Figure 22)

325.     Case agents reviewed a video one minute in length which showed COLLINS and another individual, believed to be ARMSTRONG, are inside of a vehicle. ARMSTRONG appeared to be the driver of the vehicle and a prescription medication bottle is shown on the center console, with COLLINS being the front seat passenger and an unidentified rear seat passenger. ARMSTRONG is seen opening one of the prescription medication bottles and pouring the unknown liquid into a two-liter bottle of Faygo soda, and immediately after ARMSTRONG pours the liquid in, the soda turns purple (Figures 23, 24, and 25 are screen shots from the video). Based on my training and experience, this video would be consistent with the manufacturing of "lean."  As the camera pans towards the rear seat passenger, there is a plastic sandwich bag in the back center console next to the unidentified rear passenger, which based on my training and experience, is a tool of the trade used by drug traffickers to package controlled substances for sale.



(Fgiure 23)                    (Figure 24)                    (Figure 25)

326.     Case agents also reviewed a four second video that showed several large bags of suspected marijuana.  Based on my training and experience, it appeared to be at least 20 bags of one to two pounds of marijuana (Figure 26 is a screen shot).



(Figure 26)

**c.** ████ ██████████████ **Account**

327.     Case agents reviewed ████ Instagram account ██████████. Case agent

located items connecting him to DTO members and demonstrating his ongoing engagement in drug

trafficking.

328.     Case agents located messages between ████ and "Fat_pooh". Case agents

know this account to belong to TENNER, based on the messages between ████ and "Fat pooh".

Case agents observed very little communication other than sharing posts with each other, which

occurred frequently.

329.     Case agents located messages between ████ and "Hnic_cheese8". Case agents

know "Hnic_cheese8" belongs to ARMSTRONG, based on the messages between ████ and

"Hnic_cheese8". The conversation took place from January 7, 2023, through December 20, 2023.

Through review of the message thread, they commonly sent each other attachments and there was

very little conversation of substance.

330.     Case agents located messages between ████ and "Trapbaby_fanpage". On

September 23, 2023, "Trapbaby_fanpage" offered ████ a line of "Tris" for $170. Based on my

training and experience, I know "Tris" to be a code word used by drug traffickers as codeine or

"lean".

98

331.  Case agents located messages between ████ and "Small_exoticbullzz".  On May 14, 2023, "small_exoticbullzz" gave ████ the phone number 414-788-5549 immediately followed by a video of a large bag of suspected marijuana.

332.  Case agents located messages between ████ and "Chickenp_rre".  Case agents know "Chickenp_rre" to belong to Rahkeib D Smith, based on the investigation and contact of "Chickenp_rre" account.  On August 23, 2023, ████ stated, "I got purple poed let's hit mazi".  "Chickenp_rre" responded and gave ████ his phone number, 414-460-8542. On October 10, 2023, ████ said, "I got a zip a tris fa u…on me".  Based on my training and experience, these conversations were consistent with drug trafficking, specifically "lean" and the sale of "lean."

333.  Case agents located messages between ████ and "Bigdawg.reggie".  On September 29, 2023, ████ arranged to purchase two 10-ounce bottles of "purple" that would be arriving on the October 15, 2023. "Bigdawg.reggie" sent a photograph to ████ on November 4, 2023, of a liquid prescription bottle of promethazine/codeine filled at the Froedtert Pharmacy, RX #12231670 on November 3, 2023 (Figure 27) and told him it would be $1,750.  Based on my training and experience, these messages were consistent with the sale of controlled substances, like to manufacture "lean".



(Figure 27)

334. Case agents located messages between ███ and "Lilnaz.turnt". On August 19, 2023, ███ directed "Lilnaz.turnt" to meet at 33rd/Auer. Based on the investigation into the DTO, case agents know that TENNER, is associated with two residences located on North 33rd Street and West Auer Street, Milwaukee, Wisconsin.

335. Case agents located messages between ███ and "Golden_honesty". On July 8, 2023, ███ asked "Golden_honesty" for a rental for a month. On July 9, 2023 "Golden_honesty" responded, "I'm finna give you number meet him I'm in Chicago". Based on training, experience, and the investigation into the DTO, I believe ███ was referring to a rental vehicle, which are commonly used by DTO members to engage in drug trafficking. On July 21, 2023, the ███ and "Golden_honesty" discussed going to see a movie together. During the conversation ███ said he "stay on da sth…58 Oklahoma". Based on the investigation into ███ case agents determined he uses ███████████████, **Milwaukee, Wisconsin (Target Location 4)**, which is near ███████.

336. Case agents located messages between December 16, 2022, through December 15, 2023, with ███ and "Big_droop2". Case agents know the account Big_droop2 to belong to HAMPTON Jr. based on review of the public account in which HAMPTON Jr. has photos of himself posted. Further, in review of messages on the accounts belonging to COLLINS, case agents confirmed that HAMPTON Jr. is the user of "Big_droop2".

337. On February 20, 2023, ███ asked "Wya" and HAMPTON Jr. responded "outhere that's some green cus…ain't no more juice around". Based on my training and experience, I believe these messages related to HAMPTON Jr. drug trafficking and not having any more controlled substances to sell. On March 3, 2023, ███ asked, "droop wer it at" and HAMPTON Jr. responded, "cam". On May 5, 2023, HAMPTON Jr. said to ███ "boy yu stingy with the

100

juice". █████ responded, "omb I been but n zips". Based on my training and experience, █████ and HAMPTON Jr. are again discussing the distribution of controlled substances.

338.    Case agents located messages between █████ and "Reekmoney6roc". On June 8, 2023, █████ asked, "wat hap n". "Reekmoney6roc" responded, "got pulled over w no L's w bitch didn't have enough time to get button off…bitches be fucking shit up we was chilling finna hit stu but he should be good. I talked to em waiting on em to see judge". Based on my training and experience, it appears "Reekmoney6roc" was pulled over by law enforcement and has a firearm with a Glock auto-sear switch, also known as a "button", which makes a semi-automatic firearm into a fully automatic firearm.

339.    Case agents located messages between █████ and "Malicious_millz". On November 15, 2023, the two were discussing meeting and malicious_millz told █████ that she could get an Uber. █████ sent an audio message asking if she remembered where he was at. malicious_millz responded, █████ She then stated, "finna be on my way I'm in the shower" and approximately 40 minutes later, "pulling up". This message is consistent with the investigation, which has demonstrated █████ resides at ████████████████████ **Milwaukee, Wisconsin (Target Location 4).**

340.    Case agents located messages between June 15, 2023, through November 26, 2023, with █████ and "_taaee__". Case agents know the account _taaee__ to belong to BRUCE based on the profile pictures for the account along with other social media posted by DTO members with BRUCE in the post. On June 15, 2023, BRUCE asked █████ "Can I get a line man"? BRUCE subsequently told █████ he was on the "east". Based on my training and experience, this would be consistent with BRUCE attempting to a drug trafficking telephone from █████ to sell

controlled substances. Most of the conversation consisted of sharing and liking posts however on

June 15, 2023, ▮▮▮▮▮ sent BRUCE an audio message of his phone number.

341. Case agents located messages between ▮▮▮▮▮ and "165_bigbub". On April 18,

2023, 165_bigbub sent ▮▮▮▮▮ a photograph of what appears to be metal Glock switches, which

based on my training and experience make a semi-automatic firearm became automatic, with the

caption of $200 each (Figure 28). On June 26, 2023, ▮▮▮▮▮ said, "I need a drake lil bro" and

165_bigbub advised that he would ask around. Based on my training and experience, "drake" is a

term used to reference a type of firearm.



(Figure 28)

342. On May 31,2023, ▮▮▮▮▮ posted a large amount of US currency estimated to be

over $40,000 based on how many bundles are shown and tagged big_droop2 (Figure 29). Based

on my investigation, training and experience, this large amount of cash is consistent with drug

trafficking.



(Figure 29)

343.    Case agents also observed a file 17982216044126883, which is a video that depicted a male standing at open driver window caption with the caption "dey don't wanna see em wit dem Cubans on" (Figure 30 is a screen shot). The male is observed counting out $80 and began to hand the money to an individual believed to be ███████ as the video cut off.



(Figure 30)

344.    Case agents reviewed a video titled, file 17991606968129956, which depicted a repost of a video posted by the account hnic_cheese8 (Figure 31 is a screen shot). ████████ is observed in a back seat of a vehicle with █████████ with a large bag of suspected marijuana in his lap.



(Figure 31)

345.    Based on review of COLLINS's and ████████ Instagram accounts, information provided by CSs, and controlled buys, I believe both COLLINS, ████████ and other DTO members have been engaged in large-sale drug trafficking since at least July 2022 and the DTO's criminal conduct is ongoing.

### F.    Surveillance of Collins DTO and Search Locations

346.    During the investigation into the DTO, DTO members have been observed in numerous vehicles, including some registered to DTO members or their associates, and other rental vehicles, some by DTO members and other rented by associates of DTO members.  These vehicles would include (but not be limited to): a Chevrolet Traverse with Florida license plate JJH-M52 (Traverse) (COLLINS);; a Honda Pilot rental bearing FL registration 35PBWL (Pilot) (COLLINS); a ████████████████████████████████████████████████

██████) (JACKSON, ██████ and TENNER); a black Honda Civic bearing Wisconsin license plate AMR- 4746 (Civic) (BRUCE); a black Toyota Rav 4, bearing Arizona license plate CWN-7763 (Rav 4) (COLLINS); a Nissan Rogue bearing Wisconsin license plate ARE-7654 (Rogue) (WINSTON); a 2018 black Nissan Altima, bearing Wisconsin license plate AJL-8956 (Nissan Altima) (JACKSON); a 2017 Ford Escape bearing Wisconsin license plate APG-2029 (Escape) (██████ a 2017 Hyundai Tucson, bearing Wisconsin license plate AFB-9806 (Tucson)(TENNER); a black Toyota Camry bearing Illinois license plate FP215094 (Camry) (COLLINS); ████████████████████ (██████ a gray Audi Q5 bearing Wisconsin Fleet license plate 15664AFT (Audi) (WILDER); a blue Honda Odyssey Minivan, bearing Wisconsin license plate, AUN-7847 (Odyssey) (BRUCE and HAMPTON Jr.); ████████████████████████ a████████████████████████ a silver Mazda SUV bearing Minnesota license plate KJL-289 (Mazda) (COLLINS); a gray 2023 Ford F-150 rental vehicle bearing Illinois license plate FP200843 (F-150) (WILDER); a white 2013 Hyundai Sonata sedan with Wisconsin license plate AJA-5060 (Sonata) (WILDER); a 2023 Jeep Gladiator bearing Michigan registration DE75373 (Gladiator) (WILDER); a██████████████████████████████████████ a 2017 Ford Fusion bearing Wisconsin license plate APT-3844 (Fusion) (HAMPTON); and a 2023 Chrysler Voyager bearing Michigan license plate ETF1978 (Voyager) (JACKSON).

347.    DTO members have switched out vehicles numerous also, which is a common tactic used by drug traffickers in an attempt to evade law enforcement. Based on this DTO's methods, it is likely vehicles associated with DTO members and their residences would likely have evidence of their drug trafficking, including drug documentation.

a. **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)**

348.    During physical surveillance between July 2022 and January 2023, case agents have observed COLLINS at **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)**. Case agents have observed MADDEN and COLLINS coming and going from **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** throughout the day over the past several months.

349.    On May 24, 2033, case agents observed a Chevrolet Traverse with Florida license plate JJH-M52 (Traverse) parked in front of the residence at **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1).** Case agents later observed COLLINS exiting **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** and entering the Traverse. Case agents determined the Traverse was a rental vehicle and records indicated it was rented by MADDEN.

350.    On September 13, 2023, case agents observed COLLINS leaving **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** and operating a rental vehicle directly to a location where he completed a drug transaction with UC 2.

351.    On October 23, 2023, and it appeared that the there was an exchange of what appeared to be a cellphone during the meeting between WILDER and COLLINS at **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)**. Case agents observed WILDER operating the Audi.  COLLINS was in a Honda Pilot with Florida license plate 35PBWL (Pilot) at **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1.** Case agents determined the Pilot was a rental vehicle and it was rented by Brianna MADDEN. Case agents observed COLLINS and WILDER exit the front door of **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)**. Based on a review of the data location from the COLLINS DTO's

106

telephone number 414-419-4427, case agents believe that the known dope line was passed to COLLINS based on the new locations being received. Case agents believe the contact would indicate that WILDER met with COLLINS to supply COLLINS with the known dope line.

352. Case agents obtained rental agreements for known rental vehicles being operated by COLLINS as well as multiple members of the DTO and learned that the rental vehicles that case agents observed COLLINS operating were rented by MADDEN, who used **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** as her address on the rental agreements.

353. Case agents obtained utility records and learned that the utility account for **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** is in the name of Brianna MADDEN. The account was active as of May 5, 2022, and the number provided for MADDEN was 414-349-3267, which is the number case agents have identified as the number for MADDEN.

354. Case agents reviewed law enforcement databases, which indicates telephone number 414-349-3267 is listed as "private name" but has historical information showing its connected to MADDEN with the address of **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)**.

355. Case agents obtained Instagram records for COLLINS and in the records COLLINS references his residence being on the "east side" which is where case agents know **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** is located. Case agents know that COLLINS and MADDEN are currently residing at **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** based on their surveillance and the above information.

356. During the early morning hours of January 5, 2024, case agents observed a silver Mazda SUV bearing Minnesota license plate KJL-289 (Mazda) parked in front of **2456 North**

**Cramer Street, Milwaukee, Wisconsin (Target Location 1)**. Case agents learned that the Mazda was rented through Avis/Budget. The renter of the Mazda was identified as Brianna MADDEN with the return date of January 22, 2023. Based on the rent agreement and observations case agents believe COLLINS was the operator of the vehicle. MADDEN utilized the address of **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** for this rental agreement which is different than in the past rental agreements where she has used **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)**.

357.    At 7:35 p.m. case agents located the Mazda parked at the intersection of North Cramer Street and East Greenwich Avenue, Milwaukee, Wisconsin. Case agents established surveillance of the Mazda. At 7:55 pm case agents observed what was believed to be a residential motion activated light adjacent to the Mazda illuminate. Approximately five seconds later the Mazda began driving northbound on North Cramer Street. Due to the lack of lighting in the area it is unknown of the driver re-entered the vehicle or if a passenger entered the vehicle.

358.    Case agents followed the Mazda to the intersection of East Park Place and North Oakland Avenue at which point case agents observed the Mazda parked on East Park Place east of the intersection. The Mazda remained there for five minutes at which point it was followed back to **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)**. Case Agents were unable to see the occupants exit the Mazda however shortly after its arrival it was observed to be turned off and unoccupied. Approximately 20 minutes later case agents observed a Black Honda Passport, believed to be Brianna Madden, park in the parking area directly behind **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)**. Surveillance was concluded at 9:30 pm as there was no additional movement. Case agents continuously monitored the court authorized electronic surveillance of data of the COLLINS's DTO telephone number 414-419-

4427. The location information for COLLINS's DTO telephone number 414-419-4427 appeared to consistently move around the City of Milwaukee and not being associated with the movement of the Mazda. However, court authorized electronic surveillance for COLLINS's telephone number 414-588-7260, was consistent with the travel of the Mazda.

359. Case agents conducted surveillance on COLLINS on January 5, 2023. Case agents had been monitoring the court authorized location data of COLLINS DTO's telephone number 414-419-4427 and COLLINS's telephone number 414-588-2760. Case agents noted that the two devices appeared to be separated as the COLLINS's telephone number 414-588-2760 appeared to be in the area of Mayfair Mall and COLLINS DTO's telephone number 414-419-4427 appeared to be in the area of West Silver Spring Drive and North 27th Street, Milwaukee, Wisconsin. At 6:35 pm COLLINS DTO's telephone number 414-419-4427 was near the intersection of North Hopkins Street and West Ruby Avenue, Milwaukee, Wisconsin with a 592-meter radius. Based on this location of COLLINS DTO telephone number 414-419-4427m case agents believed the phone was potentially in the custody of WINSTON who resides at **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3)**.

360. Case agents responded to **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3)** and arrived at approximately 7:00 pm and were unable to locate the Rogue that WINSTON has operated in the past. Case agents obtained updated location information for COLLINS DTO's telephone number 414-419-4427 and noted that at 6:45 pm COLLINS DTO's telephone number 414-419-4427 was near the intersection of North 27th Street and West Center Street, Milwaukee, Wisconsin with a 330-meter radius, which indicated the device had moved.

361. At 7:05 p.m. case agents noted that the location of the COLLINS's telephone number 414-588-2760 line appeared to be moving east through the City of Milwaukee. Based on

109

this case agents established surveillance on COLLINS' residence, **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** and Cellular Journie, **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)**. Case agents noted that there were no familiar vehicles parked in front of **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1) and** the Honda Passport, bearing Wisconsin license plate AKZ-4244 (Passport), owned by Brianna Madden, was not at the residence. During the investigation case agents observed MADDEN operating the Passport and Wisconsin DOT records indicated the Passport is registered to MADDEN.

362.    At 7:20 pm case agents observed the silver Mazda SUV bearing Minnesota license plate KJL-289, which was rented by MADDEN, park in front of **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)**, facing south. Case agents observed an unidentified individual appear from the area of the Cellular Journie entrance, **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7),** and open the front passenger door of the Mazda. The individual did not enter the Mazda and appeared to be talking with the driver. Approximately three minutes later the unidentified individual walked away from the vehicle and walked towards the area of the Cellular Journie entrance. The Mazda immediately began to drive southbound on North Holton Street and out of the view of case agents. Other case agents were unable to intercept the Mazda due to the short length of the contact in front of the store.

363.    On January 22, 2023, COLLINS and MADDEN were the Mazda and stopped by the Milwaukee County Sheriff's Office COLLINS was operating the Mazda.  COLLINS was identified by Wisconsin photo ID card and Brianna MADDEN, front seat passenger, was identified by Wisconsin photo ID card. During the stop, COLLINS was found to have a revoked driver's license, and the Mazda was subsequently towed during the ensuing investigation.  MADDEN was

taken into custody for Carrying a Concealed Weapon (CCW) and was issued a Municipal citation for Possession of Marijuana. Madden was transported to Milwaukee County Jail, and COLLINS was released from the scene, and was issued a citation for Operating while Revoked. During the stop COLLINS provided an address of 9261 W. Allyn Street #F, Milwaukee, Wisconsin, which is a known previous address for COLLINS, but is not the address COLLINS has been observed residing at during the investigation. MADDEN provided an address of 3839 N. 38th Street, Milwaukee, Wisconsin which is a known previous address for MADDEN; however, like COLLINS, has not been observed residing at during the investigation. In addition, MADDEN provided a phone number of 414-364-3625 and COLLINS provided 414-588-2760. Deputies located a Glock 42 firearm inside the Mazda. Case agents do know that COLLINS and MADDEN did not provide truthful information given the fact that case agents are aware that they are currently residing at **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** in the City of Milwaukee, and also observed the same vehicle that was stopped on January 22, 2024, in front of the residence at **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** on the morning of January 31, 2024.

> **b.      3533 North 60th Street Milwaukee, Wisconsin (Target Location 2)**

364.    Case agents identified 3533 **North 60th Street, Milwaukee, Wisconsin (Target Location 2)** to be the primary residence for WILDER.

365.    On October 6, 2023, WILDER delivered 85.6 gross grams of a substance that later tested positive for fentanyl to UC 2. WILDER conducted that transaction from the Audi. An administrative subpoena directed towards the registered owner, Ean Holdings LLC, was served. The renter of the Audi was identified as WILDER.

111

366. On October 24, 2023, case agents learned through law enforcement databases that the Audi was parked in front of the residence at **3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2)**. Case agents located the Audi parked on a slab associated with **3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2).** Case agent reviewed law enforcement database and learned that **3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2)** is rented to Desida Smith. Further case agents obtained utility records for **3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2)**, which indicated the utilities are in D. Smith's name. Based on the investigation, case agent determined D. Smith is not related to WILDER; however, it appears that WILDER and D. Smith residence together. Case agents observed the Audi, in the parking slab associated with **3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2)**.

367. On January 8, 2024, at approximately 5:50 a.m. case agents observed a gray 2023 Ford F-150 rental vehicle bearing Illinois license plate FP200843 (F-150) on the parking slab associated with the **3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2)**. An administrative subpoena directed towards the registered owner, PV Holding Corp, was served. The renter of the Ford F-150 was identified as WILDER.

368. On January 23, 2024, case agents checked **3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2)**. At approximately 9:31 a.m., case agents observed a white 2013 Hyundai Sonata sedan with Wisconsin license plate AJA-5060 (Sonata) on the rear parking slab behind **3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2)**. Wisconsin DOT records indicated the Sonata had a registered owner as Shannon D WILDER, with a listed address of 3234 North Palmer Street, Milwaukee, Wisconsin. Based on my training and experience, I know

those engaged in drug trafficking will often provide false addresses in an attempt to evade law enforcement.

369.    On January 29, 2024, case agents observed WILDER exit the residence **3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2)** and enter a vehicle that was parked in the parking slab for **3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2)**. The vehicle was a 2023 Jeep Gladiator bearing Michigan registration DE75373 (Gladiator). Case agents learned that the Gladiator is a rental vehicle, rented through Enterprise.  Case agents then obtained information from Enterprise showing that WILDER was the individual on the rental agreement for the vehicle indicating it was rented on January 25, 2024, until February 9, 2024. The address WILDER provided was his DOT address of 3234 North Palmer Street. Case agents observed WILDER enter the Gladiator and immediately exit and walk back inside **3533 North 60th Street, Milwaukee, Wisconsin (Target Location 2).**

### c.    4618 North 38th Street Milwaukee, Wisconsin

370.    Case agents know **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3),** to be the primary residence for WINSTON.

371.    On August 28, 2023, WINSTON updated his Wisconsin DOT address to **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3)**.

372.    On December 12, 2023, WINSTON's address was updated to **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3),** in Waukesha County Case Number 2023CM002092.

373.    Case Agents have also conducted surveillance of **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3),** on numerous occasions and have observed

113

WINSTON's known vehicle, the Rogue, parked in front of **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3).**

374. On January 4, 2024, at approximately 3:15 pm case agents observed the Rogue parked in front of **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3)**.

375. On January 8, 2024, at approximately 6:20 a.m. case agents observed the Rogue parked in front of **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3)**.

376. Case agents learned that the Rogue was issued a parking citation in front of **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3)** on the morning January 24, 2024, for a violation of overnight parking restrictions.

377. On January 30, 2024, case agents conducted surveillance at **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3)**. At 8:00 a.m. case agents observed the Rogue parked directly in front of the residence **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3)**. Case agents observed WINSTON exit the residence at 8:40 a.m. and enter the Rogue's front driver's side. An unidentified black female exited **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3)** a short time later and entered the Rogue via the front passenger door. Case agents were able to positively identify WINSTON during this time.

378. Case agents followed the Rogue to the area of North 42nd Street and West Auer Avenue, Milwaukee, Wisconsin, where it remained for several minutes before proceeding to 4900 West Fond Du Lac Avenue, Milwaukee, Wisconsin. The Rogue parked for several minutes before WINSTON exited and entered the building at this location. At that time the female exited the Rogue and re-entered through the driver's side door and left the area. Case agents followed the Rogue back to the residence on **4618 North 38th Street, Milwaukee, Wisconsin (Target Location 3)** where the female parked the Rogue and exited and entered **4618 North 38th Street, Milwaukee,**

**Wisconsin (Target Location 3)** and exited a minute later carrying what case agents believed to be two shoe boxes. The female placed then in the rear passenger seat and entered the Rogue and drove away southbound onto North 38th Street where case agents terminated surveillance due to the erratic driving of the female operator.

379. Case agents remained at the location of 4900 West Fond Du Lac Avenue and 10:45 a.m. case agents observed WINSTON exit the building and the Rogue pulled up and the female operator exited and entered via the front passenger door with WINSTON entering the driver's side and driving away. Case agents then followed WINSTON to a residence located at 3208 North 42nd Street where the Rogue parked, and WINSTON exited and entered the residence.



        **d.** ███████████████████ **Milwaukee, Wisconsin (Target Location 4)**

380. Case agents know ███████████████████ **Milwaukee, Wisconsin (Target Location 4)** to be the primary residence for TENNER ███████.

381. Case agents reviewed jail call made by ██████ following his arrest on January 6, 2024. On January 12, 2024, case agents listen to call to telephone number 414-793-0708, in which TENNER was three-way called. During the conversation ██████ made comments about needed the house when release, consistent with ███████████ resided together.

382. During the review of ██████ cell phone seized by the MPD during his arrest on January 6, 2023, as well as Instagram records pertaining to his account, the address ██████████ ██████████████ **Milwaukee, Wisconsin (Target Location 4)** was identified.

383. Case agents reviewing ██████ telephone extraction for number ██████████ observed that on August 13, 2023, ██████ provided a drop location of ████████████, Milwaukee, Wisconsin, which would be consistent with his residence of █████████ ██████████ **Milwaukee, Wisconsin (Target Location 4)** to COLLINS's telephone number

115

414-588-2760. Also, on December 27, 2023, ███████ again provided the location ████████ ████████, **Milwaukee, Wisconsin** which would be consistent with ██████ residence of ███ ████████████████████████ **Milwaukee, Wisconsin (Target Location 4)** to COLLINS's telephone number 414-588-2760, which COLLINS responded, "OK pulling up".

384.    In the Instagram account belonging to ████████ case agents noted on November 15, 2023, ████████ sent a message to malicious_Millz asking if she remembered where he was at and the account responded to ██████████████, which is consistent with ████████ residence of ████████████████████████ **Milwaukee, Wisconsin (Target Location 4).**

385.    On January 19, 2024, case agents located ████████ at the Milwaukee County Courthouse. Following his court appearance ████████ was observed operating a ████████████, bearing Wisconsin temporary license plate ████████████████████ Approximately an hour later case agents located an identical ████████ parked behind ████████████████████████████████ **Milwaukee, Wisconsin (Target Location 4)**, however the vehicle registration was unable to be confirmed.

386.    On January 22, 2024, case agents observed the ██████████████ exit the parking area of the apartment for ████████████████████████ **Milwaukee, Wisconsin (Target Location 4).**

387.    On January 22, 2024, it was learned that the current name holder of utilities for ████████████████████████, **Milwaukee, Wisconsin (Target Location 4)** was TENNER. The account had been active since June 5, 2023, and listed TENNER's phone number 414-388-9117.

388.    Case agents believe between, cellphone messages, social media messages, jail calls, surveillance and utility records, ████████ ████████████ are residing together at ████████████████

116

██████████████, **Milwaukee, Wisconsin (Target Location 4).**

      e.    **5241 North 68th Street Milwaukee, Wisconsin (Target Location 5)**

389.    Case agents were conducting follow-up regarding BRUCE by reviewing a Facebook account associated with BRUCE. Posted on the public portion of the account was a photograph of BRUCE standing in an alleyway with a detached garage behind him. On the detached garage were the numbers "5234". Case agents conducted a check of addresses in Milwaukee County and located an associated address in the area of North 68th Street, Milwaukee, Wisconsin. Case agent eventually determined the residence was **5241 North 68th Street, Milwaukee, Wisconsin (Target Location 5).**

390.    Case agents received utility information for **5241 North 68th Street, Milwaukee, Wisconsin (Target Location 5),** which indicating that the account holder for the utilities is Delilah Sengsouvanh, who has been on the account since June 20, 2023. Case agents learned that the number for Sengsouvanh is 262-424-3752 and has over 1, 500 contacts in the past year with the following contacts in the case, COLLINS's telephone number 414-588-2760, COLLINS DTOL's telephone numbers 414-419-4427, MADDEN's telephone number 414-349-3267. As previously noted, it is common for those engaged in drug trafficking to put accounts and property in others' names to evade law enforcement detection.

391.    On January 23, 2024, case agents were conducting surveillance and at 7:40 a.m., case agents observed the Rogue parked on North 69th Street facing southbound, directly in front of **5241**/5243 **North 68th Street, Milwaukee, Wisconsin (Target Location 5).** Case agents observed that the main entrance for **5241North 68th Street, Milwaukee, Wisconsin (Target Location 5)** is in front of the residence with two address placards, with one being posted on each side, 5241 and 5243. Case agents do not believe this is a side-by-side residence and believe it is an upper and

117

lower residence and observed BRUCE exiting out of the common entrance for **5241**/5243 **North 68th Street, Milwaukee, Wisconsin (Target Location 5).** Case agents learned that an elderly Hispanic male resides at 5243 North 68th Street and case agents have not located any ties between BRUCE and 5243 or that male.

392.    On January 23, 2024, case agents recognized the Rogue and displayed registration plate as the vehicle used in previous controlled purchases of narcotics with BRUCE at **5241**/5243 **North 68th Street, Milwaukee, Wisconsin (Target Location 5).**

393.    At 8:17 a.m. case agents observed younger black male wearing a gray jumpsuit exit the residence at **5241**/5243 **North 68th Street, Milwaukee, Wisconsin (Target Location 5)** and approach the Rogue. As the subject turned in a northern direction near the driver's door of the Rogue, case agents were able to confirm the male was in fact BRUCE.

394.    On January 24, 2024, case agents observed BRUCE shoveling the sidewalk in front of the residence **5241**/5243 **North 68th Street, Milwaukee, Wisconsin (Target Location 5).**

395.    Case agents checked the address in law enforcement databases and found that there was a subject associated to the address **5241 North 68th Street, Milwaukee, Wisconsin (Target Location 5),** with the name Kaveyon White. Case agents reviewed law enforcement databases and learned telephone number 304-920-5675 was associated with White. Case agents learned that White's telephone number 304-920-5675 has over 600 contacts with multiple lines in this investigation including, COLLINS's telephone number 414-588-2760 and BRUCE's telephone number 414-554-8059.

### f.    5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)

396.    Case agents identified **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)** as HAMPTON Jr.'s new address. Case agent previously identified 2100 West Pierce

Street, Apartment #101, Milwaukee, Wisconsin as an address for HAMPTON Jr. following the controlled drug by with UC 2 on November 16, 2023. Further, HAMPTON Jr. had a registered address through the Wisconsin DOT as 2100 West Pierce Street, Apartment #101, Milwaukee, Wisconsin. Case agents checked the vehicle registration and learned that the Odessey was listed to a Ka'lynn Amaria Gena Baxter, with a registered address of 2100 West Pierce Street, Apartment #101, Milwaukee, Wisconsin also. However, during recently surveillance and check of utilities, case agents learned HAMPTON Jr. and Baxter have moved to **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)**.

397.    On January 23, 2023, case agents observed HAMPTON Jr. and female believed to be BAXTER, girlfriend of HAMPTON Jr., leave 2100 West Pierce Street, Milwaukee, Wisconsin. Case agents observed HAMPTON Jr. operating the Odyssey. Case agents followed them to a location identified as **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)** where the female exited and entered **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)** and HAMPTON Jr. was observed driving away.

398.    On January 24, 2024, case agents conducted surveillance and observed HAMPTON Jr. exit the building of 2100 West Pierce Street, Milwaukee, Wisconsin, and enter the Odyssey that was observed in the transaction on November 16, 2023. Parked next to the Odyssey was a 2017 Ford Fusion bearing Wisconsin license plate APT-3844 (Fusion). Case agents conducted a check of that registration and found that is listed to a Blue Ford Fusion, but this appeared to have been wrapped in an orange color at the time of surveillance. The registered owner was Ka'lynn Amaria Gena BAXTER with the same address of 2100 West Pierce Street, Apartment #101, Milwaukee, Wisconsin.

119

399. On January 31, 2023, case agents learned that the utilities for 2100 West Pierce Street, #101, Milwaukee, Wisconsin were in the name of Baxter, but ended on January 26, 2024. As on January 31, 2024, the utilities are list to the apartment management company. Case agents learned that BAXTER had opened a utility account on January 25, 2024, with the address being **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)**.

400. After learning about the utility account opened in BAXTER's name at **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)**, case agents responded to **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)** and located Baxter's Fusion parked in the driveway of **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)**. Case agents also responded to the address 2100 West Pierce Street and located the Odyssey parked in the parking lot. At 1:25 p.m. case agents observed HAMPTON Jr. walk out of the complex and enter the Odyssey via the front driver's side door. The Odyssey then left the lot and returned to the address **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)**. Prior to HAMPTON Jr. returning, case agents observed Baxter exit **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)** through the front door and take a picture of multiple boxes that were on the front porch of **5051 North Street, Milwaukee, Wisconsin (Target Location 6)**. After HAMPTON Jr. returned, he entered **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6).** At 2:58 p.m. case agents observed Baxter and HAMPTON Jr. exit **5051 North 19th Street, Milwaukee, Wisconsin (Target Location 6)** and load the boxes into the Odyssey and drive away.

401. Case agents observed HAMPTON Jr. drop at least one box with a neighbor before driving away. Case agents followed HAMPTON Jr., who was the operator and Baxter the front seat passenger, to the area of North 21st Street and West HAMPTON Jr. Avenue, Milwaukee,

120

Wisconsin. HAMPTON Jr. pulled up next to a work truck that appeared to be associated to a roofing company out of Racine. HAMPTON Jr. appeared to conduct a hand-to-hand exchange with the operator through both driver's side windows, with nobody exiting their vehicle. Both vehicles then drove off in opposite directions. Based on the short-term contact and manner of contact, case agents believe this was consistent with a hand-to-hand drug transaction. After the transaction, case agents attempted to follow HAMPTON Jr. but were unable to based on his erratic driving.

**g.    2679 North Holton Street Milwaukee, Wisconsin (Target Location 7)**

402.    Case agents know that COLLINS runs a cellphone store identified as Cellular Journie LLC, located at **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)**. During the investigation into the DTO, case agents observed DTO members at **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** several times. Case agents also reviewed messages in Instagram records where COLLINS acknowledges running the store at **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** and gives out the location **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)**.

403.    Case agents learned of **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** during multiple debriefs and interviews.

404.    Case agents learned that Cellular Journie LLC, is registered to MADDEN and located at **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)**. According to records, the Cellular Journie LLC "effective registered date" is March 4, 2022, but shows a delinquent status as of January 1, 2024. The records show that the "Registered Agent Office" is Brianna MADEN with the address **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)**.

121

405.    On May 24, 2023, case agents were conducting surveillance and observed COLLINS leave his residence, **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1),** at 11:22 a.m. and entering the Traverse which was a rental vehicle associated to MADDEN and COLLINS. Case agents followed COLLINS to multiple locations throughout the eastside of Milwaukee, where he eventually picked up an unknown black female who entered the front passenger seat.   COLLINS then pulled over in the area of 2750 North Frederick Avenue, Milwaukee, Wisconsin where he and the unidentified female remained in the car for fifteen minutes before the vehicle pulled away.  COLLINS was then followed to the cellphone store located at **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** where COLLINS parked directly in front of **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** and the female exited.  After a short time, COLLINS left the area and traveled to a Citgo gas station located at 408 West North Ave before COLLINS left and began driving erratically before case agents terminated surveillance.

406.    On October 23, 2023, case agents observed COLLINS and WILDER exit COLLINS residence at **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** and appeared to exchange a cellphone before WILDER departed.  WILDER was followed by case agents to the area of N. Holton Street and E. Center Street, near where Cellular Journie LLC, **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)**, is located before case agents lost sight of the vehicle and terminated surveillance. Case agents believe it is possible WILDER parked within a gated parking area behind **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** which would prevent them from locating WILDER's vehicle unless directly pulling in the alleyway.

407. On December 8, 2023, case agents were attempting to conduct a controlled transaction with COLLINS DTO's telephone number 414-419-4427 line and were conducting surveillance at the Cellular Journie LLC, when they observed the Rogue operated by WINSTON parked in front of **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)**. During surveillance, case agents observed the Rogue leave and come back multiple times to **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** which was consistent with the location data being received from COLLINS DTO's telephone number 414-419-4427. Case agents know that WINSTON has been involved with a controlled transaction in the past and based on these observations was parked in front of **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** and appearing to conduct transactions based on the coming and going from the store along with the phone activity where two known users, Swan, and Torres, were contacting COLLINS DTO's telephone number 414-419-4427.

408. On January 29, 2023, case agents observed the Gladiator that has been rented by WILDER, parked in the area of **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** for an unspecified amount of time. Case agents did not observe WILDER there before terminating surveillance.

**h.    4531 North 26th Street, Milwaukee, Wisconsin (Target Location 8)**

409. Case agents identified **4531 North 26th Street, Milwaukee, Wisconsin (Target Location 8)** as an address for JACKSON.

410. While reviewing ███████ phone extractions, as previously discussed, case agents noted the messages between JAKCSON and ███████ discussing the residence belonging to PATTERSON. On June 2, 2023, JACKSON sends a message to ███████ stating, "At Brianna house come grab phones". On June 8, 2023, JACKSON sends ███████ "come grab phones my

123

bitch house". On December 7, 2023, JAKCSON sends ████ a lengthy message with a portion stating, "I'm at pregnancy photos with Brianna then I'm going to the crib around 7" and "Okay we should be back by then only stopping at her mom's". Given the facts noted in surveillance and in the messages, case agents believe that JACKSON and PATTERSON are sharing a residence.

411.    Case agents reviewed law enforcement databased and identified PATTERSON's residence as **4531 North 26th Street, Milwaukee, Wisconsin (Target Location 8)**.  Case agents also confirmed that the utilities for **4531 North 26th Street, Milwaukee, Wisconsin (Target Location 8)** are in the name of Brianna PATTERSON.

412.    Case agents conducted surveillance on January 26, 2024, and observed the Altima and another vehicle identified as a 2023 Chrysler Voyager bearing Michigan license plate ETF1978 (Voyager).  Case agents learned the Voyager was a rental vehicle from Enterprise.  Case agents learned that the Voyager was rented to PATTERSON with PATTERSON utilizing the **4531 North 26th Street, Milwaukee, Wisconsin (Target Location 8)** and the Voyager was due back on January 29, 2024.

413.    On January 30, 2024, case agents conducted surveillance at **4531 North 26th Street, Milwaukee, Wisconsin (Target Location 8)**.  At 7:45 a.m.  case agents observed the Altima used by JACKSON during controlled drug transactions on July 22, 2022, and August 11, 2022, parked in front of **4531 North 26th Street, Milwaukee, Wisconsin (Target Location 8)**. Case agents know this vehicle to be registered to Brianna N. PATTERSON the known girlfriend of Deangelo JACKSON. At approximately 8:30 a.m. case agents observed JACKSON exit the front entry door of **4531 North 26th Street, Milwaukee, Wisconsin (Target Location 8)**. JACKSON walked to the Nissan and opened the driver side door.  JACKSON entered the driver position of the

124

Nissan and proceeded to drive southbound on North 26th Street. Case agents confirmed JACKSON's identity at that time.

### G. Summaries of Respective Roles and Criminal History

#### a. Qian L. COLLINS – Head of the DTO

414. Case agents have conducted two transactions with COLLINS. The first occurred on June 27, 2023, where a UC purchased 5.4 grams of fentanyl from COLLINS and the second occurred on September 14, 2023, where a UC purchased 14.8 grams of fentanyl from COLLINS. Case agents have tied COLLINS to his residence he shares with MADDEN, Brianna located at **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** and his cellphone store identified as Cellular Journie located at **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)**.

415. Through the investigation, case agents have identified COLLINS as the head of the DOT. Case agents received information that COLLINS was directly related to receiving large parcels being shipped from California to Wisconsin, and case agents are aware that other parcels that were intercepted contained illegal narcotics. Case agents evaluated tolls, cellphone records, and data location along with surveillance which leads case agents to believe that COLLINS is leading the DTO but supplying other members with controlled substances, the drug customer telephone lines, and directing others. COLLINS was identified as a top contact of individuals associated to the large delivery containing kilograms of heroin/fentanyl to an address in Milwaukee during March 2023.

416. Case agents know that when DTO members, identified as a target and ones who have not been identified as a target, have been arrested, COLLINS is usually immediately notified. Case agents have reviewed jail calls, specifically related to ██████ arrest, where ██████ instructs

125

ARMSTRONG to get into contact with "Yons peoples" regarding the posting of ▮▮▮▮ $15,000.00.

417.    Based on the above information, case agents believe that COLLINS is the leader of the DTO.

418.    COLLINS has been arrested for numerous violations including first degree reckless endangering safety, pointing/aiming firearm at law enforcement or emergency medical technician, possession with intent to deliver THC, possession with intent to deliver heroin, manufacture/deliver heroin, possession of a Schedule 1 and 2 narcotic, possession/illegally obtained prescription, battery, armed robbery, burglary, possession of firearm by a felon, maintain drug trafficking place, and operating after suspension

419.    COLLINS was convicted in Milwaukee County Case 2013CF4402 for possession with intent to deliver heroin; and Milwaukee County Case 2013CF527 for possession of illegally obtained prescription.

**b.    Deante K. BRUCE - Distributor**

420.    Case agents have conducted three transactions with BRUCE.  The first transaction was on June 20, 2023, where BRUCE sold 2.1 grams of fentanyl and 1.4 grams of cocaine to a UC.  The second occurred on August 24, 2023, where BRUCE sold 14.8 grams of fentanyl to a UC.  The third occurred on November 16, 2023, where BRUCE sold 28.9 grams of fentanyl to a UC, with the assistance of HAMPTON Jr.

421.    Case agents believe that BRUCE is a distributing based on the multiple controlled transactions with BRUCE and the information provided by CS 3 who gave information that BRUCE was a "nephew" and works for COLLINS and would complete transactions with them on COLLINS behalf. For these reasons, case agents believe that BRUCE is a member of the

COLLINS DTO.

422.     BRUCE has been arrested for numerous violations including possession with intent to deliver heroin; possession with intent to deliver THC; possession of narcotic drug; possession of THC; maintaining drug trafficking place, use of weapon; carry concealed weapon; and resisting/obstruction.

423.     BRUCE was convicted in Milwaukee County Case 2021CF4261 for possession of narcotic drugs and carrying a concealed weapon.  He is currently on Wisconsin DOC supervision. Case agents reviewed law enforcement databased and confirmed BRUCE is on active supervision with Wisconsin DOC for possession of narcotic drugs, felony conviction, and carrying a concealed weapon in Milwaukee County Case 2021CF4261.  BRUCE provide DOC with an address of 9261 West Allyn Street, #F, Milwaukee, Wisconsin.

424.     Case agents learned that a "home visit" was conducted at the residence 9261 West Allyn Street, #F, Milwaukee, Wisconsin on November 17, 2023, by BRUCE's probation officer.  The report does not indicate that BRUCE was present but states the "client lives upstairs" and that it is a three-bedroom residence.   The report states that BRUCE claims he lives at the residence with is mother.

c.     **Kevin D. WINSTON- Distributor**

425.     Case agents have conducted one transaction with WINSTON, where he sold 6.8 grams of fentanyl to a UC on July 12, 2023.  Text messages and Instagram records document WINSTON's involvement in the DTO.

426.     WINSTON has completed a transaction with UC 2 on July 12, 2023, using COLLINS DTO's telephone number 414-419-4427.  Case agents have observed WINSTON's vehicle at **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** during an

attempted controlled transaction with UC 2 on December 8, 2023. During this time, case agents observed WINSTON's vehicle coming and going from **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** over a lengthy period of time. Case agents were monitoring COLLINS DTO's telephone number 414-419-4427 and would note that COLLINS DTO's telephone number 414-419-4427 location data would be moving when WINSTON was gone which would indicate to case agents that the movements were consistent between the phones location and WINSTON leaving the area and returning. During this time WINSTON was operating the Rogue. WINSTON was also observed on January 5, 2023, at **2679 North Holton Street, Milwaukee, Wisconsin (Target Location 7)** operating the Rogue. Case agents believe that WINSTON is a member of the COLLINS DTO.

427. WINSTON has been arrested for numerous violations including second degree recklessly endangering safety/weapon; possess dangerous weapon; disorderly conduct/hate crime; burglary while armed; substantial battery; possession of firearm by a felon; armed robbery; possession with intent to deliver THC; and resisting/obstructing.

428. WINSTON was convicted in Milwaukee County Case 2014CF2373 for substantial battery and Milwaukee County Case 2015CF4090 for possession of firearm by a felon. WINSTON has an open warrant in relation to Waukesha County Case 2023CM2092.

      **d.**    **Shannon D. WILDER- Distributor**

429. Case agents have conducted one transaction with WILDER where he sold 25.6 grams of fentanyl to a UC on October 6, 2023.

430. Case agents WILDER is a family member of COLLINS and has completed controlled transactions with COLLINS DTO's telephone numbers 414-419-4427. Case agents have observed WIDLER at COLLINS's residence, **2456 North Cramer Street, Milwaukee,**

**Wisconsin (Target Location 1).** Specifically on October 23, 2023, when case agents observed WILDER exiting **2456 North Cramer Street, Milwaukee, Wisconsin (Target Location 1)** and exchanging what appeared to be a phone. Case agents were monitoring COLLINS DTO's telephone numbers 414-419-4427 and based on the movements prior to and after the meeting, case agents believe WILDER had the phone prior to the meeting and COLLINS had the phone afterwards. Based on all of this information, case agents believe that WILDER is a member of the DTO.

431. WILDER has been arrested for numerous violations including burglary; possession of a dangerous weapon; possession of a firearm in a school zone; possession with intent to deliver THC; possession with intent to deliver cocaine; operating while revoked; kidnapping; strangulation/suffocation; possession with intent to deliver cocaine; manufacture/deliver heroin; flee/elude officer; resisting/obstructing; battery; disorderly conduct; and possession of cocaine.

432. WILDER was convicted in the following matters: Milwaukee County Case 2010CF4473 for disorderly conduct and battery; Milwaukee County Case 10CM6843 for possession of cocaine; Milwaukee County Case 2012CF4612 for possession with intent to deliver cocaine; Ozaukee County Case 2016CM986 for operating while revoked; Milwaukee County Case 2017CF4084 for fleeing; and Milwaukee County Case 2018CF965 for obstructing.

e. ███████████████████████

██ █████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

129

434. Case agents are aware that ▆▆▆ was involved in multiple transactions where he sold illegal narcotics by himself and with JACKSON. Case agents have previously documented text messages between ▆▆▆ and several members of the DTO, specifically messages with JACKSON where he is threatening JACKSON for the belief that JACKSON is stealing from him and showing his displeasure with people stealing from him. Case agents reviewed jail calls where ▆▆▆ specifically talks to ARMSTRONG and tells him to get in touch with "Yons Peoples" (COLLINS) about his bail money. Based on controlled buys, social media, text messages and ▆▆▆ appears to for the reasons stated, case agents believe that ▆▆▆ is a distributor and is directing others to distribute as well.

435. ▆▆▆ has been arrested for numerous violations including operate motor vehicle without consent; resisting/obstructing; disorderly conduct; possession with intent to deliver cocaine; maintaining drug trafficking place; first degree reckless endangering safety; operate after suspension; possession of drug paraphernalia; burglary; possession of THC; possession of cocaine; manufacture/deliver THC; criminal trespass to dwelling; bail jumping; battery/threat to judge or law enforcement; possession with intent to deliver heroin; flee/elude; manufacture/deliver fentanyl; and manufacture/deliver cocaine.

436. ▆▆▆ ▆▆▆

130

**f. Deangelo L. JACKSON- Distributor**

437.   Case agents have conducted two transactions with JACKSON.  The first occurred on July 22, 2022, where JACKSON sold 6.0 grams of fentanyl to CS 1.  The second occurred on August 11, 2022, where JACKSON sold 7.0 grams of fentanyl to CS 1.  JACKSON also assisted ███████ with the transactions completed by ███████ on October 4, 2022, and June 14, 2023. Case agents have tied JACKSON to the residence, 4531 North 26th Street, Milwaukee, Wisconsin.

438.   CS 1 had indicated that they had purchasing narcotics form ███████ and JACKSON and case agents have purchased narcotics from both JACKSON and ███████ separately and together. While reviewing text messages from the phones recovered during ███████ arrest, JACKSON instructed ███████ on June 2, 2023, to "grab the phones" and later tried to explain a situation where ███████ alleged that JACKSON was stealing from him, and ███████ made threats of violence he determined JACKSON was stealing.  Based on this information case agents believe that JACKSON is a member of the DTO and is working under ███████ to distribute controlled substances.

439.   While reviewing the text messages on the phones belonging to ███████ case agents noted on August 31, 2023, Jackson asked ███████ "what happened last night"? ███████ said that he pulled up too late and Jackson responded, "Damn I had heads last night bu I gotta po visit later I need you grab my shit".   Case agents learned that JACKSON is on Wisconsin DOC supervision in Milwaukee County Case 2017CF5252 for vehicle operator/flee elude officer and conspiracy to commit manufacture/deliver cocaine.

440.   JACKSON has been arrested for numerous violations including,

131

resisting/obstructing; trespassing; retail theft; possession of cocaine; possession with intent to deliver THC; possession with intent to deliver cocaine; possession with intent to deliver heroin; carry concealed weapon; use of dangerous weapon; bail jumping; battery; disorderly conduct/armed; operate motor vehicle without consent; possession of a Schedule 1 and 2 narcotic; manufacture/deliver heroin; and manufacture/deliver cocaine.

441. JACKSON was convicted in the following matters: Milwaukee County Case 2012CM761 for possession of cocaine; Milwaukee County Case 2015CF5172 for possession of narcotic drugs and carrying a concealed weapon; Milwaukee County Case 2015CF5181 for multiple counts of manufacture/deliver heroin; and Milwaukee County Case 2017CF5252 for fleeing and conspiracy to commit manufacture/deliver of cocaine.

442. JACKSON is on supervision with the Wisconsin DOC regarding Milwaukee County Case 2017CF5252. JACKSON provided an address of 4316A North 19th Place, Milwaukee, Wisconsin. JACKSON reports living at the residence with his mother. However, based on messages review by case agents, this appears to be a false address. DOC agents attempted a home visit on December 17, 2023, but was informed that JACKSON was in the Wisconsin Dells.

g. **Kevin A. TENNER- Distributor**

443. Case agents have conducted two transactions with TENNER. The first occurred on July 14, 2023, where TENNER sold 29.0 grams of cocaine and 7.9 grams of fentanyl to CS 1. The second occurred on July 31, 2023, where TENNER sold 26.3 grams of fentanyl and 7.3 grams of methamphetamine. Case agents have tied TENNER to ███████████████████████ ████████████████████████████████

444. Case agents reviewed OWENS's jail calls while in custody in which ████████ and TENNER which demonstrate the DTO working together in drug trafficking. For example, on

January 6, 2024, ████████ instructed TENNER to "switched them", (controlled substance) then mentioned the "old crib". Case agents believe this is consistent with ████████ instructing TENNER to move the DTO's drug supply to a different location. Also on January 6, 2024, ████████ instructed TENNER to obtain a telephone to collect suspected drug debts for ████████ On January 10, 2024, ████████ instructed TENNER to contact "Yon's people" (COLLINS) to obtain suspected bail money. Based on these calls and the investigation, case agents believe TENNER is a member of the DTO working under ████████

445.    TENNER has been arrested for numerous violations including, first degree reckless endangering safety/weapon; disorderly conduct; domestic battery; possession with intent to deliver cocaine, use of dangerous weapon; possession with intent to deliver THC, use of dangerous weapon; carry concealed weapon; manufacture/deliver cocaine; manufacture/deliver heroin; possession of cocaine; possession of THC; illegally obtain prescription/narcotics; and maintaining a drug trafficking place.

446.    TENNER was convicted in the following matters: Milwaukee County Case 2010CM2324 for carrying a concealed weapon; Milwaukee County Case 2017CM3887 for possess/illegally obtained prescription; and Milwaukee County Case 2019CF4970 for possession with intent to deliver cocaine.

447.    Case agents reviewed law enforcement databased and confirmed TENNER is on active supervision with Wisconsin DOC for Milwaukee County Case 2019CF4970.

> **h.    Maurice F. HAMPTON Jr.- Distributor**

448.    HAMPTON Jr. assisted BRUCE with transaction on November 16, 2023. HAMPTON Jr. was operating a vehicle registered to his girlfriend, Ka'Lynn Amaria Gena BAXTER. Text messages and Instagram records show HAMPTON Jr. involvement in the DTO.

449.    Case agents believe that HAMPTON Jr. is a family member of COLLINS. Case agents know that HAMPTON Jr. and COLLINS have exchanged messages via Instagram. COLLINS has sent messages such as "Luv cuz be safe out there" which case agents know to be a common term utilized by members of the DTO when they are selling narcotics. HAMPTON Jr. sent COLLINS a message stating that "120 14 60 7" and COLLINS responded, "Say less way". Case agents believe this is coded discussion for illegal narcotics and weight and prices based on the numbers. Collins then sends a message stating "The right way or wrong way we gone get rich". Cased on the investigation, case agent believe HAMPTON Jr. assists he DTO by distributing drugs.

450.    HAMPTON Jr. has been arrested for numerous violations including, disorderly conduct; armed robbery; burglary; first degree recklessly endangering safety; battery; possession with intent to deliver heroin; possession with intent to deliver cocaine; and resisting/obstructing.

451.    HAMPTON Jr. was convicted in Milwaukee County Case 2019CM182 for resisting/obstructing.

### i.    Davontae L. ARMSTRONG- Distributor

452.    Case agents have documented ARMSTRONG's involvement in the DOT based on Instagram records and text messages.

453.    For example, on August 23, 2022, COLLINS send ARMSTRONG and Instagram message, "Rat at nigga must die."  On September 05, 2022, ARMSTRONG messaged, "u think u got drip huh", and COLLINS responded, "U know I know a lil sum sum."  ARMSTRONG messaged, "We call it magic."  On September 7, 2022, COLLINS messaged ARMSTRONG, "u got some big I got u and vam I was doing too much shit today folks."  As stated previously I believe the messages relate to COLLINS belief that someone is providing information to law enforcement

"Rat" and "must die".   These messages are consistent with drug trafficking sharing information about possible police informants and notifying other DTO members and to encourage others to intimidate or threaten possible informants.  Further, based on my training and experience, I believe "big" is slang for cocaine.

454.    Case agents also believe that ARMSTRONG was in the vehicle with ▮▮▮▮▮ arrested by MPD on January 5, 2023.  This is based on ▮▮▮▮▮ jail calls and the phone extraction of the Sonim Flip phones with number ▮▮▮▮▮, which appeared to be used by "Cheese" (ARMSTRONG).  The jail calls discuss if "Cheese" was good, consistent with check on if ARMSTRONG evade arrest.  Further, telephone number ▮▮▮▮▮ had "Cheese" being referenced several times, including messages consistent with drug sales, locations, and payments.

455.    Based on the investigation, case agents believe ARMSTRONG is a distributor that works with other members to distribute the DTO's controlled substances.

456.    Case agents reviewed law enforcement databased and confirmed ARMSTRONG is on active supervision with Wisconsin DOC regarding Milwaukee County Case 2015CF5179, where he was convicted of manufacture/deliver heroin.  ARMSTRONG provide DOC with an address of 3201 North 8th Street – Upper, Milwaukee, Wisconsin.

457.    ARMSTRONG has been arrested for numerous violations including, possession with intent to deliver cocaine; entry to locked vehicle; criminal damage to property; theft/movable property; burglary; bail jumping; resisting/obstructing; manufacture/deliver heroin; operating while suspended; armed robbery; maintaining drug trafficking place; and possession of THC.

458.    ARMSTRONG was convicted in Milwaukee County Case 2011CF104 for burglary; Milwaukee County Case 2013CF214 for bail jumping; Milwaukee County Case 2015CF5179 for manufacture/deliver heroin; and Milwaukee County Case 2015CM4458 for

135

criminal damage to property. ARMSTRONG currently charge in Milwaukee County Case 2020CF2907 for possession with intent to distribute cocaine, second and subsequent offense, party to crime. According to Wisconsin Circuit Court records, ARMSTRONG failed to appear for court in this matter on March 2, 2023, and a bench warrant was issued.

## IV.    TECHICAL BACKGROUND

459.    As described above and in Attachment B, this application seeks permission to search for records that might be found on the Target Location, in whatever form they are found. One form in which the records might be found is data stored on a cellular telephone or computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

a.    *Probable cause.* I submit that if a computer, cellular telephone, or electronic storage medium is found at the Target Locations, there is probable cause to believe records associated with the DTO's activities will be stored on the same, for at least the following reasons:

- Based on my knowledge, training, and experience, I know that this DTO frequently uses cellular telephones and social media applications to communicate.
- I also know, based on my knowledge, training, and experience, that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.
- Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record

136

of deleted data in a "swap" or "recovery" file.

- Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

- Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

b.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how such electronic devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the Target Locations because:

- Data on the computer, cellular telephone, or storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

- As explained herein, information stored within a computer, cellular telephone, and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or

137

controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating, or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

- A person with appropriate familiarity with how a cellular telephone or computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

- The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellular telephone or computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

- Further, in finding evidence of how a cellular telephone or computer was used,

138

the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

- I know that when an individual uses a cellular telephone or computer to operate a website that is used for illegal conduct, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The cellular telephone or computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone or computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a cellular telephone or computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

c. *Necessity of seizing or copying entire computers, cellular telephones, or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of cellular telephone or computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following: (i) The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage

139

media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site; (ii) <u>Technical requirements</u>. Cellular telephone and computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge; and (iii) <u>Variety of forms of electronic media</u>. Records sought under this warrant could be stored in a variety of storage media formats that may require off- site reviewing with specialized forensic tools.

        d.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying cellular telephones, computers, and storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

        e.    Because multiple people share the Target Locations, it is possible that the Target Locations will contain cellular telephones, computers, or storage media that are

predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

f.   *Unlocking Apple brand devices:* I know based on my training and experience, as well as from information found in publicly available materials including those published by Apple, that Apple devices are used by many people in the United States, and that some models of Apple devices such as iPhones and iPads offer their users the ability to unlock the device via the use of a fingerprint or thumbprint (collectively, "fingerprint") or facial recognition in lieu of a numeric or alphanumeric passcode or password. These features are called Touch ID and Face ID, respectively. If a user enables Touch ID on a given Apple device, he or she can register up to 5 fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) at the bottom center of the front of the device. In my training and experience, users of Apple devices that offer Touch ID often enable it because it is considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities and thus have a heightened concern about securing the contents of the device. In some circumstances, a fingerprint cannot be used to unlock a device that has Touch ID enabled, and a passcode or password must be used instead. These circumstances include: (1) when more than 48 hours has passed since the last time the device

141

was unlocked and (2) when the device has not been unlocked via Touch ID in 8 hours and the passcode or password has not been entered in the last 6 days. Thus, in the event law enforcement encounters a locked Apple device, the opportunity to unlock the device via Touch ID exists only for a short time. Touch ID also will not work to unlock the device if (1) the device has been turned off or restarted; (2) the device has received a remote lock command; and (3) five unsuccessful attempts to unlock the device via Touch ID are made. If Touch ID enabled Apple devices are found during a search of the Target Locations, the passcode or password that would unlock such the devices are presently unknown to law enforcement. Thus, it will likely be necessary to press the finger(s) of the user(s) of any Apple device(s) found during the search of the Target Locations to the device's Touch ID sensor in an attempt to unlock the device for the purpose of executing the search authorized by this warrant. Attempting to unlock the relevant Apple device(s) via Touch ID with the use of the fingerprints of the user(s) is necessary because the government may not otherwise be able to access the data contained on those devices for the purpose of executing the search authorized by this warrant. In my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, in my training and experience, that person may not be the only user of the device whose fingerprints are among those that will unlock the device via Touch ID, and it is also possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, in my training and experience, I know that in some cases it may not be possible to know with certainty who is the user of a given device, such as if the device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for

law enforcement to have the ability to require any occupant of the premises to press their finger(s) against the Touch ID sensor of the locked Apple device(s) found during the search of the Target Locations in order to attempt to identify the device's user(s) and unlock the device(s) via Touch ID. Although I do not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience I know that it is common for a user to unlock a Touch ID-enabled Apple device via the fingerprints on thumbs or index fingers. In the event that law enforcement is unable to unlock the Apple device(s) found in the Target Locations as described above within the five attempts permitted by Touch ID, this will simply result in the device requiring the entry of a password or passcode before it can be unlocked. Due to the foregoing, I request that the Court authorize law enforcement to press the fingers (including thumbs) of individuals found at the Target Locations to the Touch ID sensor of the Apple brand device(s), such as an iPhone or iPad, found at the Target Locations for the purpose of attempting to unlock the device via Touch ID in order to search the contents as authorized by this warrant.

## V.    CONCLUSION

460.    For the reasons discussed herein, there is probable cause to believe that Qian L. COLLINS (DOB XX/XX/1994), Deante K. BRUCE (DOB XX/XX/1997), Kevin D. WINSTON (DOB XX/XX/1996), Shannon D. WILDER (DOB XX/XX/1989), Kevin A. TENNER (DOB XX/XX/1987), Deangelo L. JACKSON (DOB XX/XX/1991), ███████████████, Maurice F. HAMPTON, Jr. (DOB XX/XX/1997), Davontae L. ARMSTRONG (DOB XXXX/1992),   (hereinafter "TARGET SUBJECTS") with various drug trafficking offenses, including conspiracy to distribute Fentanyl, cocaine, and cocaine base in the form of "crack cocaine." Further, there is probable cause to believe that located at and in the following

143

properties, more fully described in Attachment A and collectively referred to as "TARGET LOCATIONS," are items that constitute evidence of the crimes committed by the TARGET SUBJECTS, including violations of possession and distribution of controlled substances, and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841 and 846; and use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843, as described in Attachment B.